## Richmond.

SMITH v. WATSON, SUMNER & CO.

DECEMBER 6th, 1886.

Absent, LEWIS, P., and HINTON, J.

1. PRINCIPAL AND AGENT—*Liability—Case at bar.*—S. did business as
   " O. D. P. Mills," with K. for manager. K. bought goods, gave
   notes, and conducted concern. September 1st S. leased the busi-
   ness to K., and so advertised in Richmond. August 29th K. went
   to N. Y., and, as usual, bought goods from W., who regarded S. as
   principal and solvent, and K. as agent and insolvent, no mention
   being made by K. to W. of intended lease. The goods were received
   at the mills, and K. writing on the usual paper headed " O. D.
   Paper Mills, S. Proprietor," sent W. a note for the price of the goods,
   signed, as usual, " O. D. Paper Mills, K. Manager," which was
   accepted by W., and placed to credit of S. Afterward, K. sent W.
   a circular announcing the lease whereof W. had never before heard.
   The note having been protested for non-payment, W. sued S.
   on it—
HELD :
   Under the circumstances, S. is liable on the note.
2. WITNESS—*Impeachment—Former statement.*—Where agent testifies
   in chief, that he, and not principal, is liable for the debt, it is allow-
   able on cross-examination to ask him if, on a former occasion, giv-
   ing time, place and person, he had not said principal ought to pay
   the debt.
3. N E W  T R I A L—*After-discovered evidence.*—New trial will not be
   awarded if after-discovered evidence be merely cumulative.

Error to judgment of circuit court of city of Richmond, ren-
dered December 8th, 1884, in an action of *assumpsit*, in which

Watson, Sumner & Co. are plaintiffs, and James C. Smith, doing business in the name of the "Old Dominion Paper Mills," is defendant.   Verdict and judgment for plaintiffs.   Defendant having excepted to several rulings of the court, the evidence was certified, and he obtained a writ of error and *supersedeas.*

Opinion states the case.

*Meredith & Cocke*, for plaintiff in error.

*Coke & Pickerell*, for defendants in error.

Fauntleroy, J., delivered the opinion of the court.

The material facts, disclosed by the record, are that the appellant, Smith, began, in 1882, to manufacture paper in Richmond, Va., under the firm and style of "Old Dominion Paper Mills"; and continued so to do until September 1st, 1883; at which date, having found it an unprofitable business, and the condition of his money matters requiring him to close the enterprise, he leased the mills to one Henry Kramer, who, from the time Smith started the said mills until he closed them, had been manager of the same for him.   On September 1st, 1883, the said J. C. Smith advertised in the "*State*" newspaper that he had leased the mills to Kramer, who was to have all the stock and pay all debts—the outstanding liabilities of the concern; to the foot of which advertisement, Kramer added the following: "Referring to the above notice, I will continue the business under the same name and style as heretofore—Old Dominion Paper Mills.   Henry Kramer, Manager."

For eighteen months or two years prior to September 1st, 1883, the "Old Dominion Paper Mills," Henry Kramer, Manager, under the proprietorship of J. C. Smith, dealt continuously

Vol. lxxxii—90

with the appellees, Watson, Sumner & Co., who were dealers in paper manufacturers supplies, in the city of New York; and who (as the record shows), had cautiously investigated, and fully assured themselves of J. C. Smith's commercial credit. Henry Kramer, whom they knew only as manager of the "Old Dominion Paper Mills," for Smith, proprietor, was without capital or means, except the salary received from Smith, as said manager, and as also clerk in his junk store.

The letters of the Old Dominion Paper Mills to Watson, Summer & Co., are set out, in extenso, in the record, and they show conclusively that they were all written by Henry Kramer, and that, as manager of the Old Dominion Paper Mills, he had unlimited authority over the business in all its details; he wrote all the letters and orders for goods, and signed them "Old Dominion Paper Mills, Henry Kramer, manager." Smith never interfered. In addition to this exclusive conduct of the business with Watson, Sumner & Co., by written orders for goods and the transmission of payments therefor, Kramer had frequently visited that firm in New York city and purchased goods and supplies from them in person, as manager for Smith, as proprietor of the Old Dominion Paper Mills.

On the 29th day of August, 1883, Henry Kramer, who had gone to New York, called, as he had frequently done before, and purchased from Watson, Sumner & Co., for Smith, fifty-one bales of gunny bagging, for the price of $590.56, the consideration of the note sued on. At the time of this sale Smith was, admittedly, proprietor of the mills, and Henry Kramer was his manager, with full power and authority to purchase goods for the mills and to bind Smith for such purchases. Watson, Sumner & Co. knew his authority; and they sold the bagging to him, as manager for Smith, as they had frequently done before. He had written to Watson, Sumner & Co. before going North, that he would call to see them on business for

Smith. Kramer said nothing to them of his contemplated lease of the mills after September 1st, and that he was buying for himself. They knew Kramer to be wholly without means, and would not have credited him for such an amount. The letters of Kramer to Watson, Sumner & Co., before his visit, heralding the coming of "Our Mr. Kramer," made no mention of, or reference to, the contemplated change in the Old Dominion Paper Mills, and they were all written upon paper with letter-heads printed upon them in large capitals, "James C. Smith, proprietor," and his letters subsequent to his visit, and return to Richmond, preserve the same silence, until the gunny bagging had been shipped and passed beyond the control of Watson, Sumner & Co., who shipped the said bagging on the 5th and 6th of September to the Old Dominion Paper Mills, as usual, believing Smith to be still the proprietor, and knowing nothing to the contrary. On September 7th, after the bagging had been shipped and had passed beyond their control, they received from Kramer the circular dated September 1, 1883, announcing Smith's lease to Kramer and his withdrawal from the proprietorship of the Old Dominion Paper Mills as of that date, Kramer still using the same letter-heads with the name of James C. Smith, proprietor, printed upon them in large capitals, and signing himself "Manager," as if no lease had been made. On September 8th Watson, Sumner & Co. received the note sued on for $590.56. It was signed "Old Dominion Paper Mills, Henry Kramer, Manager," and it came along with another note for $120.42, signed in the same way; also for a purchase prior to September 1, 1883. This was the same signature that had been constantly used during the eighteen months previous, to orders upon Watson, Sumner & Co., for goods for the mills while Smith was proprietor, and it was under the same printed letter-heading. Watson, Sumner & Co. believed these notes to be

the notes of the old concern, as they both represented debts upon which Smith was then bound to them; and in their letter acknowledging receipt of the said notes, they stated that they were "to balance account to the 1st September, 1883," when the new proprietorship began. They believed that Kramer had power to sign the said notes for the old concern, as he had power, as general manager, to order the goods for which they were given. The letters of Kramer prior to September 1st show that he had such power. The note for $590.56 was, like all the others, sent through the banks, to Richmond banks for collection, and notice thereof was served at the office of the Old Dominion Paper Mills, which was also James C. Smith's office for his other business. The said note, at maturity, was dishonored and protested for non-payment, and this suit was brought upon it. At the trial, instructions were given by the court, as agreed upon and asked by the parties; and the jury found a verdict for the plaintiff for the amount of the note and costs; and judgment was rendered accordingly.

It is contended in behalf of Smith, that Kramer bought the goods on the 29th of August, 1883, for himself, and in contemplation of the expected lease of the mills on September 1st following; and that, even admitting that Smith was bound by the purchase as made by Kramer, manager, August 29, 1883, yet, Watson, Sumner & Co., by taking the note for $590.50, signed Old Dominion Paper Mills, Henry Kramer, Manager, after receipt of the notice of the lease to Kramer, and of his assumption of the outstanding liabilities of the mills, had, thereby, impliedly released Smith, and agreed to look to Kramer. But the evidence utterly fails to support the defence.

Watson, witness for appellees, swears that Watson, Sumner & Co., sold the goods to Kramer on August 29th, as manager for Smith, as they had frequently made similar sales to him, both by orders and in person; that Kramer never mentioned

the proposed lease of the mills, and that they knew him only as Smith's manager and clerk, and to be worth nothing; and that they would not have credited him for such an amount. That they took the note for Smith's indebtedness to them as Smith's obligation; and acknowledged its receipt as such, and placed it to Smith's credit to balance the account of the Old Dominion Paper Mills, Henry Kramer, Manager, up to September 1st, when Henry Kramer's proprietorship began.

Smith was, unquestionably, bound to Watson, Sumner & Co. for the $590.56 on August 29th, 1883. He was a man of means and credit, and established dealing with Watson, Sumner & Co.; Kramer had nothing, as they well knew; and it is unnatural and improbable, that they, as prudent business men, would consent to release Smith, their solvent debtor, and accept, in his stead, one whom they knew to be worth nothing. Watson, Sumner & Co. believed the note to be the note of the old concern, and had every reason for so believing; and had no reason for believing otherwise. Smith must be presumed to have had a knowledge of the letters written by Kramer as his manager, preparing Watson, Sumner & Co. to expect the coming of "Our Mr. Kramer." He knew that unless warned to the contrary, they would regard Kramer as his manager, and would sell to him, as such, any amount of goods for the mills; yet, he failed to advise them, or warn them, by letter or telegram. The scheme of turning over an unprofitable and losing business to a dependent clerk, who was to assume all existing liabilities, cannot effect Smith's release from his existing liabilities; even if we do not consider the misleading title of the new concern, and the continued use of Smith' name upon the heading of the business lettters written in Smith's office. The plaintiffs in the suit are not seeking to fasten or fix a liability upon Smith for purchases made by Kramer after September 1st, 1883; but, Kramer having failed, and Smith,.

after two months, being again proprietor and running the mills, with Kramer still his clerk, claims to be scot-free of his old indebtedness, which was closed by his note signed Old, Dominion Paper Mills, Henry Kramer, manager, and which was received and placed to balance his account, by Watson, Sumner & Co., up to September 1st, 1883; when his proprietorship and his dealing with Watson, Sumner & Co. ended.

Watson, Sumner & Co., by taking the note for $590.56, did not intend thereby to accept the liability of Kramer and release Smith. Watson testifies in regard to the note sued on: "We took the note for the said indebtedness, believing it to be the note of the defendant (Smith). It came in the letter of September 7th, along with a note for $120.42, executed the same way and for a prior purchase. We believed them to be the defendant, Smith's, notes, and took them as such. The notes were signed, 'Old Dominion Paper Mills, Henry Kramer, Manager,' just as all the letters of defendant ordering goods had always been signed prior to September 1, 1883; and we thought, from the course of dealing with us, that Henry Kramer, as general manager of the business, was authorized to give the notes for the purchases which he was authorized to make, and which he did, and had always made, for Smith, his principal." The note was for a sale to the old concern. It was signed with the signature of the old concern. It came enclosed with another note also for a sale to the old concern; and signed with the signature of the old concern; and in a letter signed by the old concern, exactly as every letter or order for goods which Watson, Sumner & Co. had ever received from the Old Dominion Paper Mills, during the two years of J. C. Smith's proprietorship; and under a letter heading which proclaimed J. C. Smith proprietor of the concern.

We are of opinion that the verdict of the jury was amply sustained by the evidence; and the court did not err in refusing to set it aside, upon the evidence.

The only question of law in the record is as to the legality of the question propounded upon cross-examination to appellant's witness, Kramer, by appellee's counsel—"Did you not, a short time before this suit was brought, in a conversation with me, in front of the American Hotel, about the middle of the day, tell me that Smith ought to pay this note?" The question referred to the note in suit for $590.56; it was addressed, on cross-examination, to the clerk and main witness of Smith, who had just testified, on his examination-in-chief, that his principal Smith was not liable on said note, and had eagerly assumed the debt himself; though the consideration for the note was goods purchased by him for Smith, of the plaintiffs, when he was admittedly manager of Smith's mills, and empowered to bind Smith by such purchase—the practical design and effect of which testimony was to remove from Smith's shoulders his rightful responsibility, and turn the plaintiffs over to his insolvent and irresponsible clerk. It was, undoubtedly, the right of the appellees to contradict the testimony of the witness Kramer if they could; it was asked upon cross-examination; and the very form of the question shows that it was intended to lay the necessary foundation for a contradiction, and for no other purpose. We think the circuit court did not err in allowing the question to be asked.

The appellant's third and last assignment of error is, the refusal of the court to set aside the verdict and grant a new trial, upon the ground of after-discovered evidence; which was a telegram dated November 19, 1883, addressed to "Henry Kramer, Old Dominion Paper Mills," as follows: "Your unpaid note, violated promises, and misrepresenting letters, demand prompt action against you to sec ..e ourselves. WATSON, SUMNER & Co."

This telegram throws no light upon the question, whether the signature to the note, sued on, of "Old Dominion Paper

Mills, Henry Kramer, Manager," was intended to mean the old concern, or the new one, *of the same name?* It is merely cumulative, and it has no new or special significance, except that, by contrast with another telegram dated May 12, 1882, addressed "Old Dominion Paper Mills," it is intended to supply or support the implication, that Watson, Sumner and Co., by so addressing their telegram of November 19, 1883, admitted that they considered the note for $590.56 Kramer's individual note, notwithstanding that it was given and accepted for a purchase of goods made for Smith, by his manager, for the mills under Smith's proprietorship, August 29, 1883; and acknowledged in their letter of September 8, 1883, addressed simply to "Old Dominion Paper Mills," and in which they advised, that it had balanced their accounts with the "Old Dominion Paper Mills" (J. C. Smith, proprietor), *"up to the 1st instant;"* when, by the lease, Smith ceased to be proprietor, and Kramer began to be proprietor.

We are of opinion that the court did not err in refusing to set the verdict aside and grant a new trial, on the ground of the newly discovered evidence, which could not produce or induce a different verdict; and that the judgment of the said circuit court appealed from is right, and must be affirmed.

RICHARDSON, J., dissented.

DECREE AFFIRMED.