The Corn Exchange Bank of the City of New York, Respondent, *v.* American Dock and Trust Company, Appellant.

1. Fraudulent Warehouse Receipts — Bona Fide Holder. A bank that has loaned money on the security of warehouse receipts for cotton which were fraudulently issued by the president of the warehouse company to himself, but within the scope of his implied authority, is not precluded from claiming to have parted with its money in good faith, relying upon the representations of the officers of the warehouse company, by reason of the fact that it sent an employee to inspect the cotton, who reported that it was in storage, where, although he did not see it, he was informed by the superintendent of the warehouse that it was there all right, but it could not then be shown to him.

2. Evidence — Statements by Officer or Agent of Corporation to Show Knowledge. Evidence that the secretary of a corporation said, in reply to an inquiry as to the president's authority to sign warehouse receipts, that there was a time that other officers as well as the president signed them, but that the others had too much other business to attend to, and that the entire authority had been placed in the president, if it is understood to relate to receipts issued by the president to himself, is admissible in an action on receipts thus fraudulently issued for the purpose of showing that the officers knew of the manner in which he was conducting the business, and acquiesced in and assented to such management.

3. Damages — Amount Recoverable on Fraudulent Warehouse Receipts Held as Collateral. The recovery by a *bona fide* holder on warehouse receipts taken as security for a loan, when the warehouse company has been defrauded by the issuance of the receipts, but is estopped to deny their validity, must be limited to the amount of the loan, with interest, since the estoppel applies only to *bona fide* holders for value, and to them only for the purpose of protecting them from losses.

*Corn Ex. Bank* v. *Am. Dock & Trust Co.*, 14 App. Div. 453, modified.

(Argued April 26, 1900; decided June 5, 1900.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered February 19, 1897, affirming a judgment in favor of plaintiff entered upon a verdict.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Thaddeus D. Kenneson* for appellant. The judgment should be reversed and a new trial granted, because improper evidence was admitted and left to the jury upon the question of the authority of Stone, the president of the defendant, to issue warehouse certificates to himself when he actually had cotton on deposit with the defendant. (*M. L. Ins. Co. v. F. S. S. & G. S. F. R. R. Co.,* 139 N. Y. 146; *Bank of N. Y. v. A. D. & T. Co.,* 143 N. Y. 559; *H. Nat. Bank v. A. D. & T. Co.,* 148 N. Y. 612; *C. E. Bank v. A. D. & T. Co.,* 149 N. Y. 174; *United States v. City Bank,* 21 How. [U. S.] 356; *Fairlie v. Hastings,* 10 Ves. 127; *F. Nat. Bank v. O. Nat. Bank,* 60 N. Y. 278; *Luby v. H. R. R. R. Co.,* 17 N. Y. 131; *Hamilton v. N. Y. C. R. R. Co.,* 51 N. Y. 100; *Anderson v. R., W. & O. R. R. Co.,* 54 N. Y. 334.) In order to recover against the principal it is necessary to show that the person taking the instrument issued by the agent has parted with value and has parted with such value because he relied on the assumed truth of the representation of the agent while in fact it was false, and that he has, in consequence of such reliance, been damaged. Plaintiff parted with whatever value it did part with, not in reliance upon any representation made by any agent of the defendant, but in reliance upon the false representation of its own agent. (*N. R. Bank v. Aymar,* 3 Hill, 262; *Mechanics' Bank v. N. Y. & N. H. R. R. Co.,* 13 N. Y. 599; *F & M. Bank v. B. & D. Bank,* 16 N. Y. 125; *N. Y. & N. H. R. R. Co. v. Schuyler,* 34 N. Y. 30; *Griswold v. Haven,* 25 N. Y. 595; *Armour v. M. C. R. R. Co.,* 65 N. Y. 111; *Bank of Batavia v. N. Y., L. E. & W. R. R. Co.,* 106 N. Y. 195; *F. A. Bank v. F. S. S. & G. S. F. R. R. Co.,* 137 N. Y. 231; *C. Nat. Bank v. Bank of Albion,* 52 Barb. 592; *Fulton Bank v. Phœnix Bank,* 1 Hall, 562.) The charge of the court as to the measure of damages was erroneous. (*Chinery v. Viall,* 5 H. & N. 287; *Brierly v. Kendall,* 17 C. B. 937; *Fowler v. Haynes,* 91 N. Y. 346; *Adams v. Bowerman,* 109 N. Y. 23; *Payne v. Burnham,*

62 N. Y. 69 ; *Allaire* v. *Hartshorne,* 1 Zab. [N. J.] 665 ; *Griswold* v. *Haven,* 25 N. Y. 595.)

*John M. Bowers* for respondent. The verdict was rendered in obedience to a charge following the rules of law laid down by this court. (*C. E. Bank* v. *A. D. & T. Co.,* 149 N. Y. 181.) The defendant's claim that errors arose on the reception of evidence which justify a reversal of the judgment is erroneous. (*Martin* v. *Webb,* 110 U. S. 7 ; *Hanover Bank* v. *A. D. & T. Co.,* 148 N. Y. 615 ; *Holmes* v. *Moffat,* 120 N. Y. 162 ; *Rock* v. *White,* 86 Hun, 501.) Whether or not the bank parted with value upon the warehouse receipts themselves was a question for the jury. (*Zabriskie* v. *Smith,* 13 N. Y. 322 ; *Grissler* v. *Powers,* 81 N. Y. 57 ; *People* v. *Haynes,* 14 Wend. 546 ; *Bruce* v. *Burr,* 67 N. Y. 237 ; *Gould* v. *Segee,* 5 Duer, 260 ; *McBride* v. *Farmers' Bank,* 26 N. Y. 450.) Where a party claiming to be moved by false representations has made also contemporaneous investigations, the jury must determine whether the representations or the investigations were the moving cause of the parting with value. (*Brown* v. *Post,* 1 Hun, 303 ; 62 N. Y. 651 ; *McMaster* v. *Ins. Co. of N. A.,* 55 N. Y. 222 ; *Shaw* v. *Stine,* 8 Bosw. 157 ; *Zabriskie* v. *Smith,* 13 N. Y. 322 ; *Clark* v. *N. S. & L. Bank,* 32 App. Div. 319 ; *Birdsall* v. *Russell,* 29 N. Y. 250 ; *Seybel* v. *Nat. C. Bank,* 54 N. Y. 288 ; *Welch* v. *Sage,* 47 N. Y. 143 ; *Cartwright* v. *Wilmerding,* 24 N. Y. 521 ; *B. B. of State Bank* v. *Hoge,* 35 N. Y. 65.) The plaintiff was entitled to recover the market value of the cotton described in the warehouse certificates. (*Griswold* v. *Haven,* 25 N. Y. 595 ; *Fowler* v. *Haynes,* 91 N. Y. 346 ; *Ingersoll* v. *Van Bokkelin,* 7 Cow. 670 ; *Lyle* v. *Barker,* 5 Binn. 457 ; *Buck* v. *Remsen,* 34 N. Y. 383 ; *Parish* v. *Wheeler,* 22 N. Y. 494 ; *H. N. Bank* v. *A. D. & T. Co.,* 14 App. Div. 255.)

HAIGHT, J. This action was brought to recover the value of a quantity of cotton represented by warehouse receipts issued by the defendant to one Stone and by him transferred

1900.] Corn Exch. Bank *v.* Am. Dock & Trust Co. 335

N. Y. Rep.]        Opinion of the Court, per Haight, J.

to the plaintiff as collateral security for a loan of five thousand dollars. The defense interposed was, in substance, to the effect that the warehouse receipts in question were issued by Stone, as president of the defendant, to himself, and that he did not have in storage with the defendant the cotton called for by the receipts, and that they were consequently false and fictitious. Upon the maturity of the note given to the plaintiff by Stone for the loan of the five thousand dollars the money was not paid, and thereupon the plaintiff demanded of the defendant the cotton called for by the certificates. The defendant refused to deliver for the reason that Stone did not have authority to issue certificates to himself and that he did not have in storage the cotton called for. The question as to whether the defendant is liable under these certificates has already been considered in this court on a former trial in this case (149 N. Y. 174), and also in the cases of *Bank of New York* v. *American Dock & Trust Company* (143 N. Y. 559) and *Hanover Nat. Bank* v. *American Dock & Trust Company* (148 N. Y. 612). In those cases it has been, in substance, held that the certificates issued by Stone, as president, to himself, on their face gave a purchaser such notice as should put a prudent person upon inquiry in regard to Stone's authority to issue the certificates, and in order to sustain a recovery the plaintiff must show that implied authority had been conferred upon Stone to issue certificates to himself, and if he was thus authorized and he issued certificates on his personal account for cotton not on deposit, the defendant would be liable to respond to a *bona fide* holder thereof for value. While Stone had been given general authority to issue warehouse receipts to persons placing merchandise in storage, he had not, by the by-laws, been authorized to issue receipts to himself. It, therefore, became necessary for the plaintiff to establish on the trial that the officers of the defendant knew that Stone had issued certificates to himself, or that he had engaged in so doing for such a length of time that they ought to have known of it, and that they had acquiesced in such acts for such a time as would estop

them from denying to purchasers for value that his power to so certify did not in fact exist. The trial was chiefly directed to this issue which has been determined by a verdict in favor of the plaintiff and affirmed by the Appellate Division.

It is now contended, on behalf of the appellant, that the defendant is not liable for the reason that the plaintiff did not part with the money loaned upon these certificates as collateral, relying upon the representations made by Stone at the time of making the loan, but that instead the plaintiff parted with the money upon the representation of its own servant and agent.

It appears that for a number of years the plaintiff's officers in making loans upon warehouse certificates were accustomed to inspect the goods in the warehouse before paying over the money. This duty devolved upon one Mead, an employee of the bank. Mead was furnished with a description of the cotton called for in the certificates, and he went down to Staten Island, where the warehouses were located, for the purpose of making an inspection of the cotton. On arriving at the warehouse he met a Mr. Jewel, the defendant's superintendent in charge, and showed him the memorandum of the cotton that he wished to inspect; Jewel replied to him saying, " well, that cotton is here all right in store, but I cannot show it to you now, because it has an inspection number." Thereupon Mead returned to the bank and reported that the cotton was in storage, and the money was subsequently paid over by the bank upon checks drawn by Stone. It is not claimed that Stone ever had any authority to issue fraudulent or false certificates to himself. The contention of the plaintiff is that he had implied authority to issue certificates to himself representing goods that he had in storage, and with this authority he was able to deceive the public with his false certificates while acting within the apparent scope of his authority as agent of the company. For this reason the company became bound to protect innocent owners and holders for value. It, therefore, became important for the plaintiff to establish, not only Stone's authority for issuing certificates

1900.] Corn Exch. Bank *v*. Am. Dock & Trust Co.    337

N. Y. Rep.]      Opinion of the Court, per Haight, J.

to himself, but also that the bank parted with the money in good faith, relying upon the representations made to its officers. We should, therefore, have no doubts about the correctness of the appellant's claim were it not for the fact that the plaintiff's agent was deceived or misled by the action and declaration of the defendant's superintendent at the time that the plaintiff's agent called to inspect the cotton. He was then informed that the cotton was there in storage all right, but that it could not then be shown to him. The plaintiff's agent acted upon these representations and made his report to the bank. It is said that he was not refused admission to the warehouse; that he ought to have gone in and looked for the cotton; that had he done so he would have found that it was not in storage. Possibly this discovery would have been made had he persisted and entered the warehouse, but after he had been either deceived or misled by the defendant's superintendent with reference to the cotton being on storage, we think that the defendant cannot now avail itself of the claim that the plaintiff did not rely upon the representations of the agents of the defendant in parting with its money.

Numerous exceptions taken upon the admission and rejection of the evidence have been argued both orally and upon the briefs of counsel, but we cannot, within the reasonable limits of an opinion, discuss them all. We have, however, carefully considered them together with the exceptions taken to the charge of the court and have reached the conclusion that the rulings should be sustained. There is one which we think should be specially considered, and that we regard as the most serious. The plaintiff claimed that it might lay before the jury, for the purpose of showing implied authority in Stone to sign these certificates, whatever facts its officers prosecuting an investigation would naturally have discovered. For this purpose one Halls, who was the cashier of the Hanover National Bank, and as such had made loans to Stone upon warehouse certificates, was called as a witness. As to one of the transactions, he testified to a conversation as having taken place, either at the bank or at the defendant's office,

43

with a Mr. Hascy, the secretary of the defendant, in which he stated to him that Stone "was the sole officer who signed these certificates at this time, and I then said: 'Did not other officers used to sign?' and my recollection is that Mr. Hascy answered me to the effect that there was a time when other officers had signed, but that the other two officers, Mr. Bostwick at that time, I think, and Mr. Pouch, had too much other business to attend to and the entire authority had been placed in Mr. Stone." This evidence was taken under the objection and exception of the defendant.

There appears to be some conflict as to the meaning of this testimony. It is contended, on behalf of the defendant, that Hascy's attention was not drawn to the fact that Stone, as an officer of the defendant, had signed warehouse certificates in favor of himself, and that Halls' inquiry was directed to the ascertaining of Stone's general authority to sign warehouse certificates in favor of persons other than himself, and not in his own favor. If this is the proper construction of the testimony, then we fail to see how harm resulted from the evidence, for no contention is made on behalf of the defendant that Stone did not have authority to issue warehouse receipts to the customers of the defendant other than himself. The other construction placed upon the testimony is that Hascy was speaking with reference to a certificate issued by Stone to himself. Giving the testimony this construction, it must be conceded that in many cases it would not be competent, for, ordinarily, the admission of a single officer will not bind the corporation; but the peculiar issue in this case must be borne in mind. The plaintiff was seeking to establish the fact that the officers of the defendant had consented and acquiesced in Stone's issuing certificates to himself, after knowledge that he was doing so. In order to accomplish this it was necessary to show that the officers knew, or at least ought to have known, that Stone was issuing such certificates, and, further, that they had permitted or acquiesced in his doing so. Had the plaintiff sent an agent to each director of the defendant and he had asked the question as to whether Stone had authority to issue

such certificates and they had severally answered in the affirmative, we think there could be no doubt as to the competency of the evidence of the agent as to the answers returned by the directors, not, perhaps, as showing that the corporation was bound by the declarations, but as establishing the fact that the officers of the corporation knew of the manner in which their president was conducting the business of the company, and that they acquiesced in and assented to such management.    Upon this theory it appears to us that the evidence was proper.

We are thus brought to a consideration of the question of damages.    The court charged the jury that if the plaintiff was entitled to recover, the measure of the damages was the value of the cotton called for by the certificates.    The defendant asked the court to charge that the jury could not award a greater sum than that loaned to the plaintiff, with interest. This the court refused, and an exception was taken by the defendant.    In this we think the court erred.    The rule of damages adopted by the trial court is undoubtedly correct in cases in which the warehouse company has not been defrauded.    The case was tried upon the theory that the defendant was estopped from claiming that the cotton was not on deposit by reason of its having given its president the authority to issue certificates to himself.    This estoppel, however, only applies to *bona fide* holders for value, and to them only for the purpose of protecting them from losses.    The plaintiff had taken these certificates as collateral security for the payment of a loan made to Stone.    It became interested in the certificates only to the extent of the loan made and the interest accrued thereon.    The defendant is required to respond in damages because of the authority that had been given its agent, Stone, and not by reason of the fact that it had the cotton in storage.    The company had been defrauded by its president, but still it is required to make good the losses sustained by the plaintiff.    The recovery, therefore, should have been limited to the amount of the loan and interest.    It is now contended on behalf of the respondent that

the certificates were placed in the plaintiff's hands as collateral to be applied upon any other liability of Stone to the bank; that after this loan another was effected for sixty-five hundred dollars. It does appear that a note was discounted for that amount by Stone at the plaintiff's bank, but it also appears that this was for the purpose of a renewal of a note previously given and was for an antecedent debt, or at least the jury might have so found had the question been submitted to it.

For the reason above given we think the judgment must be reversed and a new trial ordered, with costs to abide the event, unless the plaintiff stipulates within twenty days to reduce the judgment to the amount of the five-thousand-dollar note and the interest thereon. If the stipulation is given, then the judgment should be modified accordingly, and for that amount affirmed, without costs of this appeal to either party.

PARKER, Ch. J., O'BRIEN, MARTIN, VANN and LANDON, JJ., concur; BARTLETT, J., reads memorandum for affirmance, as follows:

I agree for affirmance, but do not vote for reduction of the judgment.

I am of opinion that the transaction in regard to the discount of the $6,500 note amounted to a new credit on the pledge of the collaterals held by the bank.

Judgment accordingly.