# CHARLESTON.

UNION BANK & TRUST Co. *v.* LONG POLE LUMBER Co.

Submitted June 9, 1911.　Decided March 26, 1912.

1. PRINCIPAL AND AGENT—*Rights and Liabilities of Third Persons —Authority to Agent—Termination.*

　　On the termination of an agency, persons who have dealt with the principal through the agent may continue to do so, in the absence of knowledge of the fact, and, as to them, such acts of the former agent will bind the principal. (p. 560).

2. CORPORATIONS—*Powers and Liabilities—Representations by Officers and Agents.*

　　The general principles of the law of agency apply to private corporations and their officers. (p. 561).

3. SAME.

　　To protect itself against subsequent action, on its behalf by an officer or agent, whose powers have been terminated, as to persons with whom it had previously transacted business through him, a private corporation must give notice of the termination of his powers, unless actual knowledge thereof has

otherwise been obtained by such persons.   Mere publication of
the fact in a newspaper is insufficient.   (p. 561).

4.   SAME.

If a thing done by an officer of a corporation is part and par-
cel of its general and ordinary business and he apparently has
the general management and control of its business, it is with-
in his apparent authority, and binds his principal in favor of a
third person, relying in good faith upon such authority in the
transaction.   (p. 564).

5.   PRINCIPAL AND AGENT—*Authority of Agent—Ratification of Un-
authorized Acts.*

A principal, benefited by an unauthorized act of his agent, can-
not deny the authority of the agent to do the act from which
such benefit accrued, without first having restored the property
or other thing so acquired, or paid to the injured party the
value thereof.   (p. 567).

6.   SAME—*Authority of Agent—Evidence—Testimony of Agent.*

On an issue as to the authority of an agent, he is a competent
witness and may testify to acts done on behalf of his principal
and the latter's knowledge thereof, in favor of a third person,
even though such third person is not shown to have had knowl-
edge thereof.   (p. 568).

7.   SAME—*Liability to Third Persons—Authority of Agent—Ap-
parent Authority.*

A third person may recover from a principal on a contract
made by the agent, on proof of apparent authority in the latter,
within the scope of which the act in question is included.   (p.
570).

Error to Circuit Court, Mercer County.

Action by the Union Bank & Trust Company against the
Long Pole Lumber Company.   Judgment for plaintiff, and
defendant brings error.

*Affirmed.*

*Sexton & Roberts* and *Ritz & Ritz,* for plaintiff in error.

*Sanders & Crockett,* for defendant in error.

POFFENBARGER JUDGE:

This writ of error involves the propriety of rulings on evi-
dence and instructions in a controversy as to the liability of a
corporation, the plaintiff in error, as indorser of a certain note,

made by its president in renewal of others previously discounted by it.

It is a single note for a balance of $2,628.60, remaining due and unpaid June 24, 1908, on some of the following notes: Jamestown Veneer Door Co., $738.56; F. L. Knowles, $500.00; James H. Cranwell, $560.00;  James H. Cranwell, $720.00; Wakefield Mfg. Co., $200.00; Toler & Sons, $314.00; and J. W. Holloway & Co., $769.70; all payable to Soble Bros., assigned to the Long Pole Lumber Company and by it discounted at the Union Bank & Trust Co., October 15, 1907; and the following notes:  Century Furniture Co., $252.52, Crouch and Beahen Co., $216.53, and Jamestown Veneer Door Co., $400.00, likewise payable, assigned and discounted, November 6, 1907. Between those dates and June 24, 1908, some of these notes were wholly and others partially paid. Some of them or portions thereof were combined in a new note, executed by Soble Bros. payable to W. J. Newenham, president of the company, and endorsed successively by him and the company. This with others of the original notes wholly or partially unpaid constituted the balance for which Soble Bros. then executed their note, payable in sixty days to Newenham, who, until the 9th day of the same month, had been president of the Long Pole Lumber Company. He endorsed it in his individual name, wrote the name of the lumber company on the back of it and gave it to the bank in exchange for the remaining notes.

Defense to this action on said last mentioned note is founded upon the hypothesis of lack of authority in Newenham to endorse it for and on behalf of the Long Pole Lumber Co., which, it is said, neither the by-laws nor any course of conduct known to the defendant in error, conferred, while he was president, and which of course he did not possess after his resignation, made and accepted, June 9, 1908. In opposition to this denial of authority, a by-law and conduct are relied upon as conferring it, supplemented by lack of notice to the bank of termination thereof by resignation.

The only evidence adduced to prove notice of the termination of such authority as Newenham had was oral testimony to the publication of a notice of the resignation in a newspaper. That is wholly insufficient, in the absence of proof that it was seen

and read by the agents of the bank, who deny that they ever saw it. On the termination of an agency, persons who have dealt with the principal through the agent may continue to do so, in the absence of knowledge of the fact, and the principal will be bound by the acts of the former agent as fully as if his authority had not ceased. *Spencer* v. *Wilson,* 4 Munf. 130; *Smith* v. *Watson, Sumner & Co.,* 82 Va. 712; Clark & Skyles Agency, p. 414, sec. 173; 31 Cyc. 1305; 1 Am. & E. Enc. L. 1220. The duty of the principal to notify third persons of the termination of the agency is of the same character and requires the same degree of certainty as that which the law imposes upon the members of a co-partnership in the case of dissolution, as a measure of protection from liability by reason of subsequent acts of the former members of the dissolved firm. *Claflin* v. *Lenheim,* 66 N. Y. 301; *Gragg* v. *Home Ins. Co.,* 107 S. W. 321. In all such cases, persons who have dealt with the principal through the agent will be protected in continuing to do so, unless and until they have in some way obtained actual notice of the termination of the relation, and, as to them, mere publication of notice in a newspaper and local notoriety of the fact are not sufficient. *Werner Co.* v. *Calhoun,* 55 W. Va. 246.

The general principles of the law of agency are applicable to corporations and the policy of the law forbids such results as would flow from denial of their application under the circumstances here disclosed. "A corporation is subject to the same extent as a natural person to the general principle that one who holds out another, or allows him to appear as having authority to act, as his agent with respect to his business generally, or with respect to a particular matter, is estopped, as against persons dealing with him in good faith, to deny that his apparent authority is real." Clark & Mar. Corp., p. 2161, sec. 708. The acts of a person acting as treasurer of a corporation, though not legally elected to the position, are binding. *Bank* v. *Gas & Light Co.,* 159 Mass. 505, 38 Am. St. 453. In a case involving the exercise of the powers of the president of a railroad corporation, the principle was declared and applied, as follows: "Persons who deal with an agent before notice of the recall of his powers are not affected by the recall." *Hatch* v. *Coddington,* 95 U. S. 48. Here Newenham had been not only ostensibly

but actually the president and, as such, dealt with the plaintiff, and the latter had had no notice of the termination of his authority at the time the note in question was endorsed by him in the company's name. Hence he still had apparent authority and the principle, of estoppel applies as in other cases of agency. This conclusion accords with general legal principles also. A status or condition shown to exist is presumed to continue until the contrary appears.

The letters transmitting the notes to Newenham, president of the company, to be by him discounted, are relied upon as notice to the bank of a special authority in him. These letters are not addressed to the bank. Its officers may never have seen them. If they did, their terms wholly fail to sustain any such contention. They bear only the signature of the treasurer of the company, and import no direct or special authority from the board of directors, from which an inference of lack of general authority might arise. They transmit the notes pursuant to an understanding between the writer and the president, and then the first one says: "After having these notes discounted I would like to have a memorandum showing the proceeds of each note." The other says: "We will need all the money we can possibly raise at present, to meet our present obligations and to arrange for our pay roll, and I hope you will be able to negotiate all the notes that I have sent to you." On the contrary, these letters carry on their faces an implication, assumption or recognition of authority in the president to discount notes and bills for and on behalf of his company. The president kept an office of the company in Bluefield, and the secretary and treasurer kept its books at another office in Pocahontas, Virginia. His testimony is that he had the entire management and control of the corporation, made its contracts, borrowed money for it and conducted its business generally, with the knowledge, acquiescence and approbation of the directors. At Bluefield, the city in which the business of the plaintiff bank was conducted, he kept an office open, over the door of which was the name of the company. His incumbency of the office of president covered a period of more than seven years, and seemingly he transacted its business, or at least a large portion of it, in the city of Bluefield during that entire period. The manager of a fire insurance agency

says he made practically all of the numerous and large contracts of insurance with his agency. After the notes sent to him for discount had been accepted by the bank, with the endorsement of the company by him as president, the proceeds thereof were deposited to the credit of the company. He then drew checks for this money, payable to the company, subscribed its name thereto by him as president and sent them to the treasurer who deposited them in a bank at Pocahontas, by which they were collected and so came back to the bank on which they were drawn. Later, and before the note in question here was endorsed and delivered in exchange for the others. Newenham, as president, deposited $500.00 in the plaintiff bank, which he had received for the company from another source, and drew the company's check for it, payable to the company itself and sent it to the treasurer which was likewise received and collected. All these transactions are admitted by the treasurer. Other deposits were made and checks drawn by Newenham as president on the funds of the company in the plaintiff bank and payable to other persons than the company were put in evidence, but the treasurer denied all knowledge of them and likewise any authority in the president to draw them. He successfully contradicts a portion of Newenham's testimony by the production of checks and notes of the company signed by himself as treasurer and countersigned by Newenham as president, the latter having testified that he alone executed practically all of the company's checks and notes. This contradiction or refutation of the claims of Newenham, however, does not disprove or negative the exercise by the president of very broad contractual powers. In the early part of 1908, according to the contention of the defendant, he became grossly neglectful of the company's business, and the management was to some extent taken out of his hands. On the 9th day of June, he tendered his resignation as president and it was accepted. His office in Bluefield seems then, or shortly afterwards, to have been closed, and all of the records and papers therein pertaining to the company's business went into the possession of other representatives of the company. Just when this took place is not disclosed, nor does it appear who took possession of the contents of the Bluefield office. The secretary and treasurer denies that certain papers which ought to have

been among those records were found there, but he does not state what he did find. He says the old notes taken up from the plaintiff bank by renewal and otherwise were not among these papers, but he is unable to show what became of them. Whether the directors held any meetings during the incumbency of the office by Newenham does not appear. Claiming to have exercised full power of management and control of the company's business, with the knowledge and approval of the directors, he does not state how they approved his action, whether by resolution or in meeting or individually, and this important phase of the company's methods is not disclosed by any other evidence. There was a meeting of the directors on the 9th day of June, 1908, when the resignation of Newenham was accepted and another man elected president to take his place.

The assignments of error relating principally to the admission and rejection of evidence and rulings upon the instructions, are dependent upon the character of the issue and the evidence, considered in the light of legal principles. They stand upon the assumption of a conflict of evidence as to the authority of the president and this claim rests upon certain contentions as to the law applicable under the circumstances. Our conclusion as to these factors in the case will, therefore, virtually dispose of all of them.

The issue involves not so much the authority actually conferred upon the president as that which he apparently had and exercised with the knowledge and consent or acquiescence of the board of directors. In other words, the inquiry goes to the extent of the power he was permitted to exercise rather than the extent of the power actually conferred. The law does not sustain the view that one dealing with a corporation through its officers must, under all circumstances, go to its by-laws as the exclusive evidence of his authority. On the contrary, the corporation is estopped to deny acts of an officer done and performed by permission of its board of directors, evidenced by its knowledge of his acts, acquiescence therein and silence. And this principle extends not only to things actually done with their knowledge and acquiescence, but to all others of the same general class or character, for the things so done establish a status or relation, defining the scope of apparent authority of

the agent to represent the principal.    Hence, the inquiry is
rather as to the character of the things done than their number
or the persons with whom the transactions were had for and on
behalf of the principal.    Another circumstance having impor-
tant bearing is the nature of the company's business. If the thing
done is part and parcel of the general and ordinary business of
the corporation and the officer in question has, to all appearances,
the general management and control of that business, the
act is necessarily within his apparent authority and persons have
a right to deal with the corporation upon that theory.

"And in all cases the president binds the corporation by his
acts and contracts when he is expressly authorized so to act or
contract, or when he has been permitted by the corporation for
some time to act and contract for it." Cook Corp., sec. 716.
"If a corporation, therefore, or its directors, either intentionally
or negligently, clothe a particular officer or agent with an
apparent authority to act for it in a particular business or trans-
action, and persons deal with him in good faith, it will be bound
to the same extent precisely as if such apparent authority were
real.    * * * *    Although a person dealing with a corporation
is bound to know whether or not the officer or agent who acts
for it is authorized to do so, yet, if he is, and the act is within
the apparent scope of his authority, the person dealing with him
is not chargeable with notice of extrinsic facts, making it im-
proper for him to act in the particular case." Clark & Mar.
Corp., sec. 708.    In a case involving a question similar to the
one we have here the Supreme Court of the United States held
as follows: "Where an officer of a railroad construction com-
pany has full charge for it of the location and construction of a
railroad, and is authorized to draw checks and drafts, and
charged with the general management of the business of the
company in the absence of contrary instructions by the board
of directors, notes given by him for moneys used to pay off
indebtedness of the company arising in the construction of the
road, cannot be held to be in excess of his powers.    It was the
duty of the directors to give contrary instructions if they
wished to withdraw the general management from the presi-
dent, and to disaffirm the action of their agents promptly if
they objected to it." *Construction Co.* v. *Fitzgerald,* 137 U. S.

98.   In *Bank* v. *Kimberlands,* 16 W. Va. 580, Judge GREEN, speaking of the apparent authority of an officer of a corporation, said: "If the acts he was in the habit of doing were not thus numerous and variant, to justify the inference, that he had authority to do the particular act or make a particular contract for the corporation, an act so done must be of the same general character, so as to involve the same general power, though it may be applied in the particular act or contract done or made to a different subject." The doctrine thus expressed is well sustained by authority. *Bank* v. *Bank,* 10 Wall. 604; *Sparks* v. *Transfer Co.,* 104 Mo. 531; *Jones* v. *Williams,* 139 Mo. 1; *Oakes* v. *Water Co.,* 143 N. Y. 430; *Curnan* v. *Railroad Co.,* 138 N. Y. 480; *Bank* v. *Trust Co.,* 163 N. Y. 332; *Chambers* v. *Lancaster,* 160 N. Y. 342; *Fuel Co.* v. *Lee,* 102 Wis. 426; *Bank* v. *Sherman,* 17 S. D. 396; *Crossley* v. *St. Philip Neri,* 67 Atl. Rep. 27; *Marlin* v. *Webb,* 110 U. S. 7; *Stokes* v. *N. J. Pottery Co.,* 46 N. J. L. 237; Morawetz Corp., sec. 538.

As has been stated, Newenham was to all outward appearances managing and controling the business of the company, and, in his transactions with the bank, exercised power of the same general kind and character as that which his principal now attempts to repudiate. He came with the notes of the company to borrow money from the bank as if such action were a part of the general business entrusted to him. He discounted the notes and then drew checks on the fund in the bank as if he had authority to do that under all circumstances. He deposited at least one other sum of money in the bank and drew the company's check for that. The bank knew all these acts on his part had passed through the Pocahontas office of the company without any objection or protest or notice of want of authority. It knew, therefore, either that the directors had approved these acts or were allowing the president to manage the business of the company just as he seemed to be doing. That the company had a treasurer who endorsed the checks for and on its behalf carried no implication or notice of less authority in Newenham than he was apparently exercising. The latter was, to the knowledge of the bank and also his principal, handling the paper of the company and using its money as if he were its chief executive officer. These transactions were such as ordinarily fall with-

in the province of such an officer of a corporation. This was a trading concern engaged in the lumber business in some way, incurring indebtedness, accepting commercial paper and necessarily using and disposing of it. The endorsement, renewal and payment of such paper falls clearly within the general management of such a concern. In addition to this knowledge, the officers of the bank knew the company maintained an office in Bluefield of which its president had charge, apparently as the active manager of the company's business. These officers, therefore, knew from transactions had with him as well as common notoriety as to his status and character that he was the active head of the corporation. Against this evidence we have practically nothing except the fact that the notes and checks of the company were generally signed by the treasurer and countersigned by the president, but not that endorsements were made otherwise than as the latter had originally made them. Proof of by-laws, showing no devolution of such power as he was exercising, is a circumstance of absolutely no weight, since it does not appear that the plaintiff had any knowledge of them. Their contents therefore argues nothing against the extent of the apparent authority of the president.

Another legal principle in the light of which the rulings of the court must be considered is that which holds a principal bound by the unauthorized act of his agent upon the theory of implied ratification. The note sued on here was accepted in exchange for other notes which the bank at the time held. These went into the hands of Newenham as president of the defendant company. What their value was is not shown, but presumptively they had some value. They have never been returned nor tendered to the bank. But for the execution of this new note the bank would no doubt have tested their value by proceeding to enforce the collection thereof and would have proceeded against the defendant itself as well as the makers, for it was bound for their payment by its endorsement. Having obtained the possession of these notes by the alleged unauthorized endorsement of the president, the defendant obtained at least the benefit of a release from liability upon them and may have obtained still further benefit. The treasurer says these notes were not found among the papers left in the office by the president and are not

now in the hands of the company. This, however, in our opinion, is immaterial, since the bank delivered them to the defendant's agent and was not thereafter responsible for his acts. Had the treasurer and the directors of the defendant company exercised due diligence in the premises, it might now be able to account for those notes and show what became of them. On the face of these facts, it is plain that the defendant has obtained a benefit and inflicted a detriment upon the plaintiff by the conduct of its officer. No matter whether he had authority to make the endorsement or not, or whether the bank had the right to believe he had such authority, his principal is estopped to deny it and is deemed to have ratified his act by its failure to restore what it obtained from the bank. "Perhaps the most common method of implied ratification is by the acceptance by the principal, with full knowledge of all the facts, of the benefit of the agent's unauthorized act is such an act as can be ratified by parol, and the principal, knowing all the facts, accepts and retains the benefit of such act he will be held to have ratified it." Clark & Skyles Con., sec. 140a. "When a principal, upon receiving property or other benefits, is informed that they were obtained in his name, it is not enough that he merely informs the seller that the purchase or other obtaining of benefits was unauthorized; but he should also, within a reasonable time either restore the property or benefits, or pay for them if he converts them to his own use." *Id.* sec. 140d. These principles have been applied by this Court in *Bank* v. *Mfg. Co.,* 56 W. Va. 446, and *Bank* v. *Kimberlands,* 16 W. Va. 579, and we think them applicable under the circumstances of this case.

Much of Newenham's testimony as to the extent of the powers exercised by him and knowledge thereof on the part of the board of directors was objected to upon two grounds: (1) that he stated conclusions rather than facts; and (2) that some transactions related by him were not shown to have come to the knowledge of the plaintiff. It was not improper to permit him to say he had had full management and control of the affairs of the company and attended to all kinds of its business, buying and selling and looking after its finances and was under the duty of executing notes, checks and other papers, and did all these things with the approbation of the directors. These were

all statements of fact, not mere expressions of opinion or conclusions. This testimony was admissible on the question of actual authority, provable by parol as well as documentary evidence. Hence proof of plaintiff's knowledge of these facts was not a pre-requisite to the admission of the evidence thereof. Nothing in the law, charter of the corporation or its by-laws inhibited a parol delegation of authority by the directors to the president, and an agent is a competent witness on the question of his authority. *Piercy* v. *Hedrick,* 2 W. Va. 458; *Garber* v. *Blatchley,* 51 W. Va. 148. On the same principle and for the same purpose, the testimony of the witness Bowman as to contracts of insurance made by Newenham with his agency was admissible, for these contracts were traced back to the company and its knowledge thereof shown. Debts so made, covering a period of years, were paid by the company. There was no error in the rejection of the offered testimony of director Wickham to the effect that Newenham failed to disclose the indebtedness to the plaintiff bank at conferences had with him about the affairs of the company at or shortly before the date of his resignation. If true, the fact was wholly immaterial. It had no tendency to prove authority or lack thereof nor to contradict any witness. Newenham had not been examined as to what transpired at any such meeting or conference and the transaction was subsequent to the endorsement in question.

Plaintiff's instruction No. 7, complained of, told the jury in substance that, if they believed from the evidence Newenham was authorized to discount the original notes, the company received the proceeds thereof, some of the notes were not paid, Newenham endorsed the name of the company on the note sued on in renewal thereof and received in exchange therefor the unpaid notes and the officers believed, with good reason, Newenham had the same authority, at the time, that he had had at the dates of the discounting of the original notes and knew nothing to the contrary, they should find for the plaintiff, even though they should further believe Newenham was not president of the company at the date of such renewal. The legal principles already adverted to sustain the ruling of the court on this instruction. The subsequent act was of the same character in general as the previous ones, which indicated authority

to bind the company by contract. The evidence justified an instruction even more favorable to the plaintiff, as intermediate acts of Newenham reflected further light upon his apparent authority. Moreover the uncontradicted evidence of ratification by retention of benefits would have sustained the direction of a verdict for the plaintiff.

All of the eight instructions requested by the defendant were refused. Of these Nos. 3 and 6 only call for any discussion, as the others were palpably bad. No. 3 was intended to warn the jury that the burden of proof was on the plaintiff as to all material allegations of the declaration. Some of these allegations were admitted and uncontroverted, or fully proved by uncontradicted evidence. This fully justified refusal of the instruction. *Fisher* v. *Kuykendall,* 61 W. Va. 87; *Parker* v. *B. & L. Assn.,* 55 W. Va. 134. No. 6 is bad because it attempted to make the issue turn on the questions of actual authority, or ratification of unauthorized action. Evidence of apparent authority, sufficing to sustain the issue, was wholly ignored by it. To say the least, it would have been misleading in that it failed to define or extend ratification so as to include estoppel, based upon evidence of apparent authority.

Seeing no error in the judgment, we affirm it.          *Affirmed.*