## CHARLESTON.

THE CHARLESTON NATIONAL BANK v. THE LEMKUHL-SHEP-
HERD COMPANY

Submitted May 29, 1924. . Decided October 7, 1924.

1. CORPORATIONS—*Corporations Held Estopped to Deny Authority
   of General Manager to Execute Note for its Benefit.*

   Where the board of directors of a corporation fails to ex-
   ercise control or supervision over the affairs of the company
   and the chief stockholder, with titles of president, director
   and general manager, serving and acting as the sole and abso-
   lute manager and proprietor of the business, executes negoti-
   able notes to the knowledge of the other directors and stock-
   holders without protest, to raise funds for the ordinary needs
   of the corporation, it will be estopped to deny his authority
   to execute a note for such purpose on the ground that no ex-
   press authorization was given by the board of directors. (p.
   287).

2. BILLS AND NOTES—*Striking Words of Negotiability From Note
   Held to Indicate Intention to Render it Non-negotiable.*

   Where a promissory note has been prepared on a printed
   form containing the words "the order of" immediately pre-
   ceding, and the words "negotiable and payable" (at a cer-
   tain bank) following, the blank for the name of the payee, and
   in the execution thereof the words "the order of" are stricken
   out with pen and ink; this act indicates an intention to make
   the note non-negotiable, notwithstanding the words "nego-
   tiable and payable" (in bank) remain, and it will be so con-
   strued. (p. 290).

Error to Circuit Court, Mercer County.

Action by the Charleston National Bank against the
Lemkuhl-Shepherd Company. There was an order setting
aside the verdict, and defendant brings error.

*Affirmed.*

*McClaugherty & Richardson,* for plaintiff in error.
*Mathews, Campbell & McClintic,* for defendant in error.

LITZ, JUDGE:

By notice of motion, under Section 6, Chapter 121, Code,

plaintiff sues as holder in due course of five several promissory notes, to-wit:

Note of The Curtis-Seal Company, a corporation, for $4,-500.00, dated November 21, 1921, payable to the order of the plaintiff one hundred and twenty days from date, indorsed by Gordon S. Seal and John R. Seal, having been given in continuance of a note for like amount dated July 27, 1920, executed in the name of The Curtis-Seal Company, maker, by Gordon S. Seal, President, payable to the order of Gordon S. Seal, at plaintiff bank four months from date, and indorsed by said Gordon S. Seal and John R. Seal.

Note of the Curtis-Seal Company for $4500.00, dated December 10, 1921, payable to the order of plaintiff one hundred and twenty days from date and indorsed by Gordon S. Seal and John R. Seal, having been given in continuance of a note for the same amount dated August 17, 1920, executed in the name of The Curtis-Seal Company, maker, by Gordon S. Seal, President, payable to the order of Gordon S. Seal at the plaintiff bank four months from date and indorsed by said Gordon S. Seal and John R. Seal.

Note for $3200.00 dated September 16, 1921, executed in the name of The Curtis-Seal Company, maker, by Gordon S. Seal, President, payable at the plaintiff bank to the order of Gordon S. Seal four months from date and indorsed by said Gordon S. Seal and John R. Seal.

Note for $2500.00 dated November 1, 1921, executed in the name of The Curtis-Seal Company, maker, by C. S. Lemkuhl, President-Secretary, "negotiable and payable" at plaintiff bank to Gordon S. Seal ninety days from date and indorsed by said Gordon S. Seal and John R. Seal.

Note for $2000.00 dated November 21, 1921, executed in the name of The Curtis-Seal Company, maker, by C. S. Lemkuhl, President-Secretary, "negotiable and payable" at plaintiff bank to Gordon S. Seal sixty days from date, and indorsed by said Gordon S. Seal and John R. Seal.

Admitting liability upon the two notes for $4500.00 each, the defendant filed its plea of *non est factum* denying that the $3200.00 note was the act or deed of The Curtis-Seal Company. It also filed a plea denying that the plaintiff was holder in due course for value and without notice of the

$2000.00 note or the $2500.00 note; and offered an additional plea, which was refused by the court, putting in issue the negotiability of these two notes.

Upon the trial, a verdict was directed in favor of the plaintiff for the $2000.00 and the $2500.00 notes, but the jury found for the defendant on the $3200.00 note. Thereupon the plaintiff moved to set aside the verdict in so far as applicable to the $3200.00 note, and the defendant moved to set aside the finding in favor of the plaintiff on the $2000.00 and $2500.00 notes. Both motions were sustained, and the verdict in whole was set aside. The defendant obtained and prosecutes this writ of error to the trial court's action, sustaining the plaintiff's motion; but no cross-error is assigned by the plaintiff to the ruling setting aside the finding in its favor on the $2000.00 and $2500.00 notes.

The Curtis-Seal Company, having a capital stock of $10,-000 divided into 100 shares of $100.00 each, on or about August 1, 1919, acquired by purchase from the Curtis-Pearson Company a retail stationery and office supply business in the city of Bluefield, West Virginia, which it thereafter operated until November 1, 1921, when by written contract the company and the then stockholders sold and transferred its assets and capital stock to C. A. Lemkuhl. The defendant Lemkuhl-Shepherd Company thereafter acquired the rights and assumed the obligations of The Curtis-Seal Company.

The record does not show when The Curtis-Seal Company was organized or disclose the names and interests of the promoters or original shareholders. Evidently it was formed by Gordon S. Seal for the purpose of taking over the business and assets of The Curtis-Pearson Company. The defense to the $3200.00 note is that it was executed by Gordon S. Seal, president of The Curtis-Seal Company, without authority. In support of this claim evidence was adduced tending to show the absence of express authorization from the board of directors. The plaintiff, conceding the general doctrine that an officer or agent of a corporation must have express authority from the managing board to execute commercial paper binding the corporation, contends that the rule is without application in this case for two reasons: first, Gordon S. Seal, with the acquiescence and consent of the board of directors,

exercised absolute control and management of the business and affairs of the corporation; second, the corporation received as benefits the proceeds of the note. In February, 1920, W. A. Campbell became engaged with the company and remained in its employ until the sale and transfer to C. A. Lemkuhl. During part or all of that period he was a stockholder in the corporation, having acquired under three purchases twenty-eight shares of its capital stock. In the summer or fall of 1920 he transferred three shares of stock to his wife, Ella S. Campbell, after which date, and until some time prior to the sale and transfer to Lemkuhl, the entire stock was owned as follows:

James S. Kahle, attorney and secretary
    of the corporation _____ 1 share
W. A. Campbell, treasurer _____25 shares
Ella S. Campbell _____ 3 shares
John R. Seal, father of Gordon S. Seal___ 1 share
Gordon S. Seal, President and General
    Manager _____70 shares

At the time of the sale and transfer Gordon S. Seal held 76 shares. These five stockholders constituted the board of directors. There was never any meeting of the stockholders, and only two meetings of the board of directors. The first of these meetings was for the purpose of increasing the capital stock, and the second to devise a plan for the sale of the new stock, which was never accomplished. Neither John R. Seal nor Ella S. Campbell attended either meeting. James S. Kahle says that he held one share of the stock "as a dummy director"; and that the corporation was "practically a one-man concern" with Gordon S. Seal in active management and control, attending to its entire business. W. A. Campbell, the only stockholder other than Gordon S. Seal who gave any attention to the business of the company, states that the latter had the management and control of its affairs. Campbell knew that before he became interested Gordon S. Seal, as sole manager of the corporation, had executed in its name two negotiable notes for $850.00 and $2100.00, respectively, which remained unpaid. He was also apprised of the

existence of the $4500.00 notes, but made no protest. It is not shown that the making of any of these four notes or the one in question was unnecessary in procuring needed funds for the ordinary and proper prosecution and management of the business. Gordon S. Seal testifies that the proceeds therefrom were used and applied for the benefit of the corporation. None of the notes previous to the one in contest appears to have been repudiated by the stockholders or board of directors either because they had been made without authority or that the proceeds therefrom were not required for the needs of the business. That the corporation sought to sell without success an increase in its capital stock evidences its need of money to meet its obligations and carry on the enterprise. The estimated value of the assets of the company on September 1, 1921, was $44,000.00, while the capital invested by the stockholders in August, 1919, was only $10,-000.00. This shows that in the conduct of the business a large amount of borrowed capital was required. The value of the stock at the time of the sale and transfer to Lemkuhl was only $86.70 per share.

As the rule is stated in the case of *Bank & Trust Co.* v. *Longpole Lumber Co.,* 70 W. Va. 558, the issue here involves not so much the authority actually conferred upon Gordon S. Seal, the president and general manager, as that which he apparently had and exercised with the knowledge and consent or acquiescence of the board of directors. In other words, the inquiry goes to the extent of the power he was permitted to exercise, rather than the extent of the power actually conferred. The law does not sustain the view that one dealing with a corporation through its officers must under all circumstances go to its by-laws as the exclusive evidence of their authority. On the contrary, the corporation is estopped to deny acts of an officer done and performed by permission of its board of directors evidenced by its knowledge of his acts, acquiescence therein, and silence. And this principle extends not only to things actually done with their knowledge and acquiescence, but to all others in the same general class or character, for the things so done establish a status or relation defining the scope of apparent authority of the agent to represent the principal. Hence the inquiry

is rather as to the character of the things done, than their number or the persons with whom the transactions were had for and on behalf of the principal.

"Where the president is given power as general manager of the business with full direction and charge thereof, he has power to do any act or make any contract that the president and general managing agent of such a corporation could do or make in the ordinary transaction of corporate business, and *prima facie* has power to do any act which the directors could authorize or ratify, unless special limitations or restrictions are put on such power, of which the party dealing with him has notice, or unless power to do the particular act is expressly given to another agent." 14-A. C. J. 358.

How much stronger is the case here where the board of directors existed only in name and the principal stockholder, with the title of president, director and general manager, served as the sole and absolute manager and proprietor of the business? Gordon S. Seal testified that the corporation received the proceeds of these notes by deposit thereof being made in his name and then transferred by his check to it. There is no proof that the corporation did not get the full benefit of the first four notes, and the only evidence to the contrary respecting the $3200.00 note is the testimony of W. A. Campbell that he found no record of this note on the books. In view of the method by which these funds reached the corporation we hardly think this character of evidence sufficient to overcome the positive proof that the company received the full benefits of the transaction. We are therefore of opinion, from the evidence before the jury, that the note in controversy was the act of The Curtis-Seal Company, that it obtained as benefits the proceeds therefrom, and that the trial court properly set aside the verdict thereon in favor of the defendant.

Shall we consider the questions arising upon the notes for $2000.00 and $2500.00? The plaintiff contends that they are not involved on this writ and that it is willing for the judgment of the trial court, setting aside the directed verdict in its favor to remain undisturbed. The defendant, however, insists that these notes are non-negotiable and that this Court should now pass upon that issue. In order that a

second writ of error may be avoided upon another trial, we see no good reason why the matter should not be determined at this time.

It is asserted by the defendant that the instruments, not being payable to "the order of" Gordon S. Seal or to bearer, as required by Section 1 of the negotiable instrument law, Chapter 98-A, Code, are non-negotiable. It is conceded that the defendant has complete defense if the notes are not negotiable. The plaintiff, on the other hand, argues that notwithstanding the notes are not payable to the order of a specified person or bearer, being "negotiable and payable at the Charleston National Bank," makes them negotiable under Section 10 of the statute providing that "a negotiable instrument need not follow the language of this Act, but any terms are sufficient which clearly indicate an intention to conform to the requirements thereof." It is shown that the notes were prepared on printed forms containing the words "the order of" immediately preceding, and the words "negotiable and payable at the Charleston National Bank" following, the blank for the name of the payee. In the execution of the papers the words "the order of" were stricken out with pen and ink. This act, we think, clearly evinces an intention to make the notes non-negotiable and shows that the words "negotiable and payable at the Charleston National Bank" remained either by oversight of the parties or by reason of their belief that this would not render the notes negotiable. They were given in evidence of part of the purchase price for the stock and assets of The Curtis-Seal Company under the contract of sale to C. A. Lemkuhl providing that non-negotiable notes should be given to cover the deferred payments. We therefore hold that they are non-negotiable.

The judgment of the circuit court setting aside the verdict in whole will be affirmed.

*Affirmed.*