Hillsborough, }
Jan. 7, 1903. }

## SMITH & a. *v.* BANK OF NEW ENGLAND.

A contract whereby one corporation agrees to hold as trustee securities pledged for the payment of certificates of deposit issued by another corporation, to rate such securities at their actual worth according to the best of its judgment, and to faithfully discharge all the duties thereby imposed, is not *ultra vires* of a charter which confers all the powers and privileges of a loan, trust, and guaranty company, including authority to act as trustee for persons and corporations.

As between a corporation and innocent third parties who have dealt with its agents, the authority of the latter to execute contracts may sometimes be inferred from a course of dealing; and evidence that the directors commonly permitted the president and treasurer to act for the company in the transaction of its business warrants a finding that they authorized a particular contract in pursuance of the objects for which the corporation was formed and within the express terms of its charter.

Prior authority, express or implied, is not essential to the validity of a contract executed in behalf of a corporation by its president and treasurer; subsequent knowledge and assent, either actual or constructive, on the part of the directors, is sufficient.

Requested instructions are properly refused if they call for abstract state-
ments of law which are misleading and inapplicable to the issue.

Upon the question of the implied authority of certain officers of a corporation
to execute a particular contract, oral testimony is admissible to show such
proceedings at directors' meetings as are relevant to the issue and are not
matters of record.

Upon the question of the validity of a contract executed by officers of a cor-
poration, evidence as to the inadequacy of the compensation received there-
under is irrelevant and inadmissible.

BILL IN EQUITY. Transferred from the January term, 1902,
of the superior court by *Young*, J.

March 29, 1892, the Union Trust Company and the defendants
entered into a contract, for the benefit of all parties who should
become interested in the subject-matter, wherein it was provided
that the Trust Company should issue certificates of deposit, and
as security therefor should assign and transfer to the defendants,
as trustees, real estate mortgages, stocks, bonds, and tax-sale certi-
ficates, the face value of which should exceed by ten per cent the
amount of certificates issued; and the defendants agreed to rate
and hold such securities at their actual worth, according to their
best judgment, to certify upon each certificate of deposit that it
was so secured, and to faithfully discharge all the duties imposed
upon them.

The Union Trust Company failed in June, 1893. The plain-
tiffs, who are holders of unpaid certificates of deposit issued by
the Trust Company and countersigned by the defendants, sought
to recover from the defendants upon the ground that the latter
were negligent in their management of the trust estate and in
approving stock of certain Iowa and Missouri corporations which
was deposited with them as a part thereof. After the question of
negligence had been determined in the plaintiffs' favor by the ver-
dict of a jury, and the exceptions taken at the former trial had
been overruled (*Smith* v. *Bank*, 70 N. H. 187), certain sharehold-
ers in the defendant corporation were permitted to intervene and
contest the validity of the trust agreement, upon their claim that
the contract was *ultra vires*, and that the officers by whom it was
executed acted without authority from the corporation.

Upon a trial of the issue thus presented, the plaintiffs' evidence
tended to show the following facts, in addition to those stated in
the opinion: The defendants' business consisted of a savings bank
department, a banking department, and a trust department, all
carried on in the same banking rooms in Manchester, under the
general superintendence of Elliott, the treasurer and active man-
ager. Briggs, the president, was frequently about the bank, and
advised and assisted Elliott to some extent. The board of direc-

tors consisted of twenty-four members and held monthly meetings, at which times the treasurer made general reports concerning the business of the bank. These meetings were not largely attended, and it was frequently difficult to secure a quorum. An executive committee of five directors had charge of the investment of funds, the negotiation of securities, and such other business as the directors might determine. The president and treasurer acted generally for the bank in the transaction of routine business.

It was admitted that the execution of the trust agreement was neither authorized nor ratified by vote of the stockholders or directors of the bank. For this reason, and upon the further ground that the evidence was insufficient to warrant a finding that Briggs and Elliott were authorized to execute the contract in behalf of the bank, at the close of the plaintiffs' evidence the defendants moved for a nonsuit; at the close of all the evidence they moved that a verdict be directed in their favor; and after a verdict for the plaintiffs they moved to set the same aside as against the law and the evidence. These motions were severally denied, and the defendants excepted.

The following questions were submitted to the jury, the words in brackets being requested modifications which were refused, subject to the defendants' exception: Did the bank give the Union Trust Company reason to believe that Briggs and Elliott were authorized to make this contract [except what was said and done by Briggs and Elliott at the time; if so, by whom and in what way]? Did the bank know, or ought it to have known, of this contract when it was made [except such knowledge as Briggs and Elliott had at the time; if so, what was it, and who had knowledge thereof other than Briggs and Elliott]? Did the bank know, or ought it to have known, of this contract before the failure of the Union Trust Company [except such knowledge thereof as Briggs and Elliott had; if so, how and when and by whom did it obtain such knowledge]? Did the bank know, or ought it to have known, of this contract before January 1, 1896 [except such knowledge thereof as Briggs and Elliott had; if so, how and when and by whom did it obtain such knowledge]?

The defendants also excepted to the denial of a request for certain specific instructions; to an instruction that the execution of the contract by Briggs and Elliott might be considered as bearing on the question of implied authority; to the admission of oral testimony as to proceedings at meetings of the board of directors of the defendant bank; and to the exclusion of evidence tending to show that the amount received by the defendants, as compensation for their services as trustees, was no more than sufficient to pay for the clerical work required to be done.

*David A. Taggart* and *Thomas G. Frost* (of New York), for the plaintiffs.

*Mitchell & Foster* and *Oliver E. Branch*, for the defendants.

REMICK, J. This case has been here twice before. First it came up on demurrer to the bill, and the demurrer was overruled. *Smith* v. *Bank*, 69 N. H. 254. A trial upon the merits followed, verdict for the plaintiff, exceptions to this court, and the exceptions were overruled. *Smith* v. *Bank*, 70 N. H. 187. The case was then in order for judgment for the plaintiffs; but as the validity of the trust contract, out of which the rights and obligations of the parties arise, was admitted at the former trial, the sole question there being whether the defendants as trustees had exercised due care in the performance of the duties imposed by it, certain shareholders of the defendant corporation moved for leave to intervene and contest the validity of the contract, claiming (1) that it was not authorized by the charter of the corporation, and (2) that it was not authorized by the corporation. The motion was granted, and there was a jury trial of the questions of fact involved. The jury found for the plaintiffs,—that the contract was authorized by the corporation,—and the case is now here for the third time upon exceptions. The substantial questions presented for our consideration are: First, was the contract *ultra vires* of the defendants' charter? Second, if not, was the evidence that its execution was authorized by the corporation sufficient to warrant the court in leaving that question to the jury?

1. Was the contract *ultra vires?* The charter expressly confers upon the defendants "all the powers and privileges . . . of a loan, trust, and guarantee company," including power to act "as a trustee for persons, firms, corporations, or estates of deceased persons." Laws 1887, c. 280, s. 1. In view of such general and comprehensive terms of authorization, there would seem to be no room for doubt that the trust contract in question is within the letter of the charter. But it is urged with much earnestness and ability that the contract constituted the defendants guarantors of the actual worth of the collateral deposited with them, and in effect required them to make examination and appraisal, in the West, of each piece of property behind the collateral deposited, and constant re-examination and reappraisal, to guard against subsequent depreciation; that even then the actual worth of the property would be subject to so many contingencies that the assets of the defendants would be in continual jeopardy; and that the legislature could not have intended to authorize a guaranty so hazardous. Without considering the authority of the court to declare a

contract of guaranty *ultra vires* of a charter conferring in general terms all the powers and privileges of a guaranty company, upon the ground that the particular contract is so hazardous in nature the legislature could not have contemplated it, it is sufficient for the purposes of the present case to say that the contract in question imposed upon the defendants no guaranty obligation, but only the ordinary duty of a trustee to exercise reasonable care in the discharge of the trust they had undertaken. *Smith* v. *Bank*, 70 N. H. 187. This much the defendants expressly assumed with reference to the plaintiffs, when, in the language of the trust contract, they accepted " said trust," and covenanted " with said company, and with all parties who shall become in any wise interested, that they will faithfully discharge all the duties herein imposed upon them." While reasonable care as to keeping on hand securities of the kind and value provided for by the trust contract might not require the defendants to have somebody constantly in the West, appraising and reappraising the property upon which their value depended, as has been suggested, it would require the defendants, as provided by the contract, to act according "to the best of their judgment," and, as charged by the court at the trial, to exercise such care as men of average prudence, under precisely the same circumstances, would have used. *Knowlton* v. *Bradley*, 17 N. H. 458; *Kimball* v. *Reding*, 31 N. H. 352; *Raynes* v. *Raynes*, 54 N. H. 201, 202, 210; *Mattocks* v. *Moulton*, 84 Me. 545, 551; *State* v. *Washburn*, 67 Conn. 187, 188; *Speakman* v. *Tatem*, 48 N. J. Eq. 136, 148, 149; *Gilbert* v. *Kolb*, 85 Md. 627, 634; Lew. Tr. 243; 1 Per. Tr., *s.* 401; Und. Tr. 253, 256; 2 Pom. Eq. Jur., *s.* 1067. We can hardly be expected to declare a contract *ultra vires* merely because it is of such a nature that failure to exercise the ordinary care required of every trustee, and for that matter of everybody, may subject the trustee to an idemnity payment wholly disproportionate to his compensation. In the present case, it is more reasonable to suppose that the legislature assumed that the defendants would protect themselves against the possibility of heavy loss from peculiarly difficult and hazardous trust undertakings, by not accepting them, than that they intended to exclude such undertakings from the general authority conferred. The conclusion is that the contract was within the terms of the charter.

2. Was the contract authorized by the corporation? It was not necessary to show a formal vote of the directors authorizing Briggs and Elliott to execute the contract. As between a corporation and innocent third parties who have dealt with its agents, authority may sometimes be inferred from a course of dealing. *Hilliard* v. *Gould*, 34 N. H. 230, 239; *Holland* v. *Association*, 68 N. H. 480;

*Williams* v. *McKay*, 40 N. J. Eq. 189; *U. S. Bank* v. *Dandridge*, 12 Wheat. 64; *Martin* v. *Webb*, 110 U. S. 7, 8; *Pittsburg etc. R'y* v. *Bridge Co.*, 131 U. S. 371, 382, 383; *G. V. B. Co.* v. *Bank*, 95 Fed. Rep. 23, 34; *Colorado Springs Co.* v. *Company*, 97 Fed. Rep. 843; *Salem Iron Co.* v. *Iron Mines*, 112 Fed. Rep. 239. Evidence of the witness Healey and others, as to the way and manner in which the directors had commonly permitted Elliott and Briggs to act for the company in matters generally, was sufficient to warrant the jury in finding that they authorized this particular contract, it being a contract in pursuance of the objects for which the defendants were incorporated and within the express terms of their charter. But prior authority, neither express nor implied, was necessary to give validity to the contract. Subsequent knowledge and assent may be equivalent to previous authority. *Libby* v. *Land Co.*, 68 N. H. 444; *Pittsburg etc. R'y* v. *Bridge Co.*, 131 U. S. 371; 6 Thomp. Corp., *s.* 5285. And it is not necessary that knowledge should be actual, or that assent should be formal, to effect such a result. If the directors, in the exercise of ordinary care, ought to have known of the execution of the contract by Briggs and Elliott, it is in law as if they knew. *Martin* v. *Webb*, 110 U. S. 7; *Salem Iron Co.* v. *Iron Mines*, 112 Fed. Rep. 239, 243; *Hanover Bank* v. *Company*, 148 N. Y. 612, 623; *Corn Exch. Bank* v. *Company*, 163 N. Y. 332; *Williams* v. *McKay*, 40 N. J. Eq. 189; 3 Thomp. Corp., *s.* 4108; 4 *Ib., ss.* 4894, 5190, 5224, 5285, 5308. Knowing, their assent might be shown by silence and acquiescence, as well as by formal vote of ratification. *Libby* v. *Land Co.*, 68 N. H. 444, 445; *Pittsburg etc. R'y* v. *Bridge Co.*, 131 U. S. 371; 4 Thomp. Corp., *ss.* 5285, 5286, 5298.

The evidence tended to show that the contract was executed by Briggs and Elliott, as president and treasurer respectively of the corporation, and kept among its papers without any fraud or concealment; that the securities deposited pursuant to the contract were kept in the defendants' vaults; that an account was kept of the transactions under the contract, in a book opened expressly for the purpose and also kept in the defendants' vaults with the other books; that during the year immediately following the execution of the trust agreement, the certificates of deposit to which the contract related were being countersigned and issued from day to day, in the defendants' office, by the defendants' agents, without pretence of fraud or concealment; that compensation was twice received for services under the contract, and entered upon the defendants' cash book; that the books and accounts of the defendants were examined and audited by committees especially appointed for the purpose by the directors and stockholders of the defendant corporation. Briggs testified, in effect, that the board of directors

were informed from time to time of the general course of the business; that he was perfectly satisfied in his own mind that some of the directors knew about the contract; that he had not said it was not submitted to the directors. Elliott testified, in effect, that he had the making of the contract in charge for the bank and the executive committee; that at the meetings of the board of directors they went over the business of the bank in general; that he made no concealment of the making and execution of this agreement, as far as the directors were concerned; and that he thought some of the directors knew about it, or might have known about it. We think these facts and circumstances quite sufficient to warrant a finding of knowledge, actual or constructive, on the part of the directors as a board; and their silence and acquiesence for nearly ten years leave no doubt of their assent.

3. The defendants' motions for nonsuit and verdict, and to set the verdict aside, were properly denied.

4. The questions submitted to the jury, as to whether the defendants gave reason to believe that Briggs and Elliott had authority to make the contract, and whether the defendants had knowledge of the contract, were warranted by the evidence, and the court properly refused to modify them as requested by the defendants.

5. The requests for instructions, to which the defendants have given attention in brief or argument, were properly refused. They called for abstract statements of law not applicable to the issues before the jury and misleading as applied to those issues.

6. The fact that the particular contract was executed by Briggs and Elliott might be considered, with other executive acts performed by them without special or formal authorization, as bearing on the question of implied authority arising from a course of conduct or dealing. The charge in this particular was therefore unexceptionable.

7. Upon the question of implied authority from a course of dealing, much that is relevant may be said and done at directors' meetings which may not be of record. That such matters may be legitimate subjects of inquiry, upon such an issue as between the corporation and third parties, cannot be doubted. So far as the directors were allowed to testify concerning matters which were actually of record, the error would not seem to be material, in view of the fact that the records were put in evidence by the plaintiffs.

8. The fact that the amount received by the defendants, as compensation for their services as trustees, was no more than sufficient to pay the clerical work, was irrelevant and properly excluded.

*Exceptions overruled.*

BINGHAM, J., did not sit: the others concurred.