Strafford,
May 6, 1930.

Harry Edelstone & a. v. Salmon Falls Manufacturing Co.

*Frederic J. Laughlin* (of Maine) and *Conrad E. Snow* (*Mr. Snow* orally), for the plaintiffs.

*Putnam, Bell, Dutch & Santry* (of Massachusetts) and *Hughes & Burns* (*Mr. Burns* orally), for the defendant.

Peaslee, C. J. The plaintiffs' evidence tended to prove a contract negotiated by Lyman. The nonsuit was ordered because of lack of proof that Lyman's acts bound the defendant. The plaintiffs claim sufficiency of their evidence to show express authority, implied authority, a holding out of the agent as authorized, and a ratification of his acts.

The general authority conferred upon the treasurer by the by-laws did not give him any power to close out the business. Such power as he had related to the conduct of the affairs of a going concern. *Dow* v. *Railroad*, 67 N. H. 1. When the issue of abandonment of the enterprise was acted upon affirmatively, a new and special grant of power to act for the shareholders was conferred. The matter of making a sale was in terms put into the hands of the directors. There-

after, and so long as the vote remained in force, any authority to act upon that subject could come from them only.

It may be true that the by-laws were still in force, but it is a fair inference that they were not adopted with any view to conferring power to act in proceedings to wind up the corporation. The stockholders treated the situation which confronted them as something outside the transaction of business provided for in the by-laws. They deemed a new grant of power to act to be desirable, if not necessary. If they had thought that the by-laws provided an agency through which the dissolution should be accomplished, there would have been no occasion for the special grant of authority. This practical construction of the by-laws by the parties in interest should be followed as the true one. Authority to act in this matter, after the stockholders' vote of September 14, 1926, was vested in the board of directors.

The only authority given by the board to the treasurer is that contained in the vote.of October 7, 1926. Apparently, the treasurer had theretofore made efforts to secure a purchaser. It was voted that "the Treasurer be and hereby is authorized to continue negotiations for the sale of the entire net assets of the corporation" and to quote a price which the directors would advise the stockholders to accept. The contract in suit was made before any further action was taken by the board; and an important issue in the case is whether this vote gave the treasurer authority to employ a broker, and promise him a commission, if he made a sale.

The treasurer was a salaried official of the company, and there is nothing to justify the inference that the authority given him included the employment of someone else to conduct the sale at a large cost to the company. He was to "continue negotiations." That is, he was to proceed in a way comparable to what he had been doing.

It is urged that the employment of a broker is so usual a method of securing a customer that authority to engage such service is to be implied. The answer to the argument is that Lyman was not given general authority to effect a sale. His authority was limited. He could continue negotiations, but he had no power to hire someone else to negotiate.

Argument has been advanced upon the proposition that as the defendant is a corporation it must be represented by someone with capacity to know, think and act. Of course this is true, but it does not follow therefrom that an agent of the corporation, appointed for a limited purpose, is clothed with these attributes as to matters

not given him in charge. The sentient general representatives of the corporation in this matter were the board of directors. Upon them was imposed the corporate duty to know and think and the corporate power to act. When they appointed an agent to perform a specified duty, his powers or status were not enlarged by the fact that he was employed by a corporation, acting through its board of directors, rather than by an individual principal. "In general, the rules which govern the authority of the ordinary agents of a corporation are not different from those which apply in the case of any other principal." Mech., Agency, s. 762.

Liability for acts not authorized in fact and not ratified may be found when the principal has not lived up to the standard of reasonable conduct towards third persons who deal with his agent. One's relation to another may be declared by acts as well as by words. *Hurd* v. *Varney*, 83 N. H. 467. While the standard is external, the conduct to be judged is not to be considered from the viewpoint of the third parties only. In order to impose a liability, it must have been such as to indicate to the principal that there was probability that others would be misled thereby. "They must show not only that they were misled by the acts of which they complain, but also that the plaintiff [the principal] ought to have anticipated that they would be." *Davison* v. *Parks*, 79 N. H. 262, 264.

There was here no holding out of Lyman as a general agent, authorized to conduct the affairs of the corporation. Its business as a manufacturer had been terminated. The property was for sale, and Lyman was trying to sell it. That is all there was in the way of appearances from which the extent of Lyman's authority would be indicated. There was nothing to induce a third party to understand that he had unlimited authority. Nothing that the directors had done, or were doing or failing to do, gave any countenance to such an idea. There was nothing to charge them with knowledge that a broker would assume that their conduct indicated that Lyman was authorized to employ someone to negotiate the sale.

The position is taken that the directors are chargeable with what Lyman did because of a duty to keep informed as to the progress of affairs in the hands of the agent appointed by them. But this duty is merely that of keeping reasonably informed as to one's affairs. There is no legal duty to inspect or investigate to ascertain whether the agent is exceeding his authority, unless there be something to put the principal upon inquiry. Mech., Agency, s. 755.

The authority relied upon by the plaintiff (*Smith* v. *Bank*, 72 N. H. 4) relates to a course of dealing by those held out as general agents. It does not relate to the power of a special agent, appointed to effect a single transaction. In such a case, liability upon this ground cannot be found unless the principal has "so conducted his business as to give third parties the right to believe that the act in question is one he has authorized his agent to do." *Davison* v. *Parks*, 79 N. H. 262, 263. To the same effect is *Castonguay* v. *Company*, 83 N. H. 1.

The claim is also advanced that the defendant ratified the employment, by an acceptance of the plaintiffs' services with knowledge of their agreement with Lyman. There is no evidence that the directors knew of the transactions with the plaintiffs. Lyman of course knew, and it could be found that Queally did. So far as appears none of the other members of the board had any knowledge upon the subject. It is argued that the statement in the record of the directors' meeting of January 5, 1927, that action was taken after a full discussion of the situation, shows that the transactions with the plaintiffs in December were then disclosed to the board by Lyman. But this record goes no further than to indicate that whatever was disclosed had full consideration. As to what was disclosed, the record is silent.

It is to be noted that, although Lyman was called as a witness by the plaintiff, no inquiry was made concerning this subject.

Knowledge of two directors is not knowledge of a board of which they are not at least a majority. *Buttrick* v. *Railroad*, 62 N. H. 413; *Hilliard* v. *Railroad*, 77 N. H. 129. In *Smith* v. *Bank*, 72 N. H. 4, this was assumed to be the law, without citation of authority. The issue then tried, and considered at length here, was whether a board had notice of transactions carried on by two of its members. All this would have been entirely superfluous if the knowledge of the two had been enough to charge the corporation.

The argument that knowledge of Lyman was that of his principal, begs the question. It assumes his authority to act in the matter. "The knowledge of an agent is the knowledge of his principal in regard to such matters only as come within the scope of the agent's employment." *Bohanan* v. *Railroad*, 70 N. H. 526, 529. To the same effect, see *Castonguay* v. *Company*, 83 N. H. 1; *Warren* v. *Hayes*, 74 N. H. 355. The liability of an alleged principal cannot be enlarged by proof that his agent to do one act knew that he had done another act which was not authorized.

At a directors' meeting held January 5, 1927, it was voted that the president and treasurer be a committee to employ a broker if they

thought best to do so. So far as appears the committee took no action to that end. It reported and was discharged at a meeting held March 16. The occasion for this action was the prospective absence of the president. A president *pro tem* was chosen, and he and the treasurer were made a committee with like power as the earlier one. There was no evidence that they acted on the subject of engaging a broker.

Here again the plaintiffs advance the argument that knowledge of Lyman was knowledge of the body of which he was a part. But he was not the whole committee, or even a majority of it. The knowledge of less than a majority of a committee is no more the knowledge of the principal than is that of a minority of a board of directors. It takes a majority to represent the principal. "Consisting of only two members, the concurrent action of both was necessary for the employment of persons at the expense of the city. It was entitled to action governed by the combined wisdom of both members." *Rider* v. *Portsmouth*, 67 N. H. 298, 299.

One ground relied upon is a liability based upon knowledge, plus action taken in view of that knowledge. As action by the two was essential, the fact that one acted with knowledge is not sufficient to show that the committee acted with knowledge. The element of "the combined wisdom of both members," acting in view of an existing but invalid agreement to employ the plaintiffs, is lacking.

As there was no evidence to charge the committee with knowledge, much less was the proof sufficient to charge the directors with knowing because the committee knew.

There was no error in the order of nonsuit.

*Exception overruled.*

Snow, J., did not sit: the others concurred.