Cheshire,
No. 4984.

HERBERT WESCOTT *v.* VERMONT ACCIDENT INSURANCE CO.

Argued January 3, 1962.

Decided May 1, 1962.

128

*Howard B. Lane* (by brief and orally), for the plaintiff.

*Faulkner, Plaut, Hanna & Zimmerman* (*Mr. John J. Zimmerman* orally), for the defendant.

PER CURIAM. The evidence tended to establish the following facts: In the fall of 1957 the plaintiff through the principal of a school in Alstead which his thirteen-year-old daughter Charlene attended, paid the defendant a premium for insurance under the policy of group insurance in question, receiving a certificate describing the coverage provided, effective "upon payment of the term premium . . . to the School," and setting forth certain requirements with respect to "Notice of and Proof of Loss."

On December 17, 1957, while preparing for a school Christmas party, Charlene fell on some stairs in the school and injured her hip. During the holiday which commenced two days later the hip was examined by a physician attending her mother. Upon her return to school after Christmas Charlene presented a "slip" to the principal from the doctor, as a result of which she was excused from the school gymnasium program.

Because of increasing lameness, Charlene was then referred through the school to a clinic at the Keene hospital where she was examined by a surgeon on February 7, 1958 and directed to remain in bed pending hospitalization. This was reported to the principal of the school who with the school nurse visited Charlene shortly thereafter and stated that he would notify the defendant of the accident. Charlene entered the Keene hospital on March 7, 1958, and on March 11, 1958 a pin was inserted in the epiphysis of the femoral bone of her right leg. She was discharged from the hospital

on March 21, 1958, but returned there in August 1959, for removal of the pin.

Bills from the attending anesthetist and the hospital which indicated the nature of the operation were received by the defendant at Rutland, Vermont on March 26 and 29, 1958. In consequence, its claim department wrote to a local agent named Putnam on March 31, 1958, identifying the policy and claim by number and reporting receipt of "Medical bills in connection with the case Charlene Wescott of Alstead, N. H." and stating: "we will await the completed claim form from you."

On June 9, 1958 the defendant received at Rutland two completed forms styled "Student Accident Report" which consisted of "PART I — TO BE COMPLETED BY SCHOOL OFFICIAL," which was completed and signed in each case by the principal of Charlene's school under date of April 4, 1958, and "PART II — TO BE COMPLETED BY THE DOCTOR," one of which was signed on behalf of the anesthetist, and the other by the attending surgeon. Neither "Part II" bore a date. The defendant then on June 24, 1958 wrote its local agent calling attention to pertinent dates, and inquired for further information. None was supplied however, and no further investigation was made.

Following Charlene's return to the hospital in August 1959, the plaintiff first learned that the 1958 bills had not been paid, and retained an attorney. After correspondence, suit was instituted by writ dated May 2, 1960.

The certificate issued to the plaintiff by the defendant contained among others the following provisions under the head of "Notice of and Proof of Loss:" "Written notice of injury must be given to the Company thirty (30) days after the date of accident. Failure to give such notice within the time provided in the Policy shall not invalidate any claim if it can be shown not to have been reasonably possible to give such notice and that notice was given as soon as was reasonably possible . . . Affirmative proof of loss on which claim may be based must be furnished to the Company not later than ninety (90) days after the date of such loss . . . . "

RSA 415:18 I (n) provides with respect to "group or blanket policy provisions" of accident and health insurance that no certificate or policy shall be issued unless it contains "A provision that no action at law or in equity . . . shall be brought at all unless brought within two years from the expiration of the time within which proof of loss is required by the policy."

The insurance which the defendant provided was against "loss of life, limb or sight and loss due to physician, surgeon . . . hospital . . . expense, resulting . . . from accidental bodily injury." The first "loss" suffered by the plaintiff was the expense of Charlene's hospitalization and medical care in March 1958, which was fixed on March 21, 1958 when she was discharged from the hospital. Proof in writing both of this expense, and the circumstances of the accident, was in the hands of the defendant on June 9, 1958, or within ninety days of the date of the loss, and the suit instituted on May 2, 1960 was brought within two years thereafter. We are satisfied that the defendant's plea of this statute of limitations was properly overruled.

It could also properly be found on the same evidence that the requirement of proof of loss within ninety days was sufficiently complied with.

The question of whether notice of the injury as distinct from "proof of loss" was furnished as required is somewhat less plain. The certificate furnished the plaintiff, while stating that "written notice of injury must be given to the Company within thirty (30) days after the date of accident," prefaced this statement with the misleading heading: "NOTICE OF AND PROOF OF LOSS."

The certificate itself drew no clear distinction between "loss" and "injury." The entire insuring agreement which was "against loss of life, limb or sight and loss due to physician . . . expense, resulting directly . . . from accidental bodily injury sustained during the term of said policy and while the Insured Student is: (1) attending school . . . (2) travelling directly from home . . . to school . . . (3) participating in any school sponsored activities . . . (4) while directly enroute between home and church affiliated with the school . . . " was followed by the statement: "hereinafter called 'Injury,' " set off in a separate line and apart from all that preceded it. Thus the ordinary insured might reasonably understand from the certificate that "injury" and "loss," for purposes of notice, were synonymous, and that the required "written notice of injury" was notice either of "loss of life, limb or sight," or of "loss due to . . . expense."

Charlene's disability was first reported within thirty days of the accident, to the school principal through whom the insurance was purchased. It further appeared that in early February, when it first became known that the injury was of more than passing significance and would involve expense which would constitute a

"loss" under the certificate, the school principal assured Charlene and her mother that he would notify the company. Thus it could be found that the company's soliciting agent had notice within thirty days of the accident that Charlene had been injured, and undertook to notify the company as soon as it became known that a "loss" within the meaning of the policy was about to be incurred.

The defendant objects that the school principal was not shown to be its agent for the purpose of receiving notice of the injury. However his signature was called for by the defendant's printed form of accident report, and not the signature of either the insured student, or her parent. The Trial Court expressly found "on the basis of the testimony" that the school principal "was an agent of the defendant," and the Court was warranted in finding that his authority did not terminate on receipt of the premium. The plaintiff as an insured under the policy had no dealings with any other agent, and might reasonably understand that the principal was the defendant's representative for purposes of notice of any claim under the policy. See *Bowen* v. *Casualty Co.*, 99 N. H. 107, 115. Similarly it could be found that if the agent did not have actual authority to receive notice of an accident, the defendant should have anticipated that its insureds would be misled into understanding that he did. *Davison* v. *Parks*, 79 N. H. 262.

It could fairly be presumed by a policyholder that the defendant did not intend to require written notice of every injury, however trivial, suffered by an insured student. On the other hand the defendant might be expected to require notice of injuries likely to result in "loss" under the policy, and to rely upon the school principal, as its agent, to communicate any notice or knowledge of the occurrence of such injuries. We conclude that the evidence warranted a finding that the plaintiff acted with due diligence in giving notice of the accident (*Hull* v. *Insurance Co.*, 100 N. H. 387, 391), and that entry of a verdict for the plaintiff was warranted by the record. See Annot. 74 A.L.R. 2d 1253.

The amount of the verdict ($1,067.92) included expense incurred later than fifty-two weeks from the date of the accident. Coverage under the policy was admittedly limited to a fifty-two-week period. According to the agreement of counsel, if the plaintiff is entitled to a verdict it should be for $811.95.

*Judgment for the plaintiff for $811.95.*