Strafford,
No. 5203.

H & B Construction Co.

*v.*

James R. Irwin & Sons.

Argued February 4, 1964.
Decided March 3, 1964.

*Philip C. Keefe* (by brief and orally), for the plaintiff.

*Nighswander, Lord & Bownes* (*Mr. Hugh H. Bownes* orally), for the defendant.

LAMPRON, J.   The defendant, primarily a realty holding company, decided to erect a steel pre-engineered building to be rented to Irwin Corporation which is engaged in the general business of selling, servicing and storing boats.   The officers of both corporations are the same persons.

Defendant investigated different types of such buildings and had plans prepared by an architect for that purpose.   The negotiations which resulted in an agreement between the parties to this action were conducted by officers of the defendant with one Booth who at the time had been a commission agent for the plaintiff for about six months.

On October 3, 1960, Booth presented to the defendant, a detailed proposal on plaintiff's letterhead, to furnish a pre-engineered building to be erected by it on a foundation to be provided by the defendant.   This proposal which referred to specifications and drawings by defendant's architect had been signed by Alvan Shuman, president of H & B Construction Co., when Booth gave it to the defendant.   It was thereafter signed by John R. Irwin, an officer of James Irwin & Sons, Inc., on its behalf.

Thereafter the defendant prepared a document entitled "Contract" which covered substantially the same subject matter as plaintiff's proposal.   The main difference was paragraph 9 of the "Contract" which provided as follows: "Time Limits.   The contractor shall endeavor to complete the work under this contract on or before November 28, 1960.   Any delay beyond November 28, 1960, shall give the owner the right to deduct the sum of Fifty ($50.00) dollars for each day's delay in com-

pletion." There was no such provision in the plaintiff's proposal.

This "Contract" was executed October 4, 1960 (the day after the date of plaintiff's proposal) by "James R. Irwin, Treas." on behalf of the defendant and by "Morrison Booth, Agent" in the name of H & B Construction Company. At the same time defendant delivered to Booth with the signed "Contract" a check for $2,000, the deposit called for by both the proposal and the "Contract." This check, also dated October 4, 1960, and the signed "Contract" were taken by Booth directly to Shuman, president of the plaintiff corporation.

Plaintiff relies on the proposal of October 3, 1960, and had the burden of proving that it was accepted by the defendant and constituted the agreement determinative of the rights and obligations of the parties. *Maloney* v. *Company*, 98 N. H. 78, 81, 82. It sought to recover a balance of $4,278 allegedly due it under the terms of this agreement.

Defendant relying on the "Contract" of October 4, 1960, filed a set-off and counterclaim in the amount of $4,600 based on its "Time Limits" clause 9. To support its claim, defendant had the burden of proving that the rights and obligations of the parties were governed by this "Contract" and that it was entitled to deduct $50 a day for 92 days of delay in its completion.

The disputed question of fact regarding the existence and the terms of the agreement which is to govern the rights and obligations of these parties is to be determined by the trier of fact in accordance with the applicable law. *Maloney* v. *Company*, *supra*, 82; *Perry* v. *Company*, 99 N. H. 451, 453; 3 Am. Jur. 2d, Agency, *ss.* 73, 76, 160, 178.

Defendant argues that since plaintiff in its declaration referred to a contract entered into by the parties "on or about October 4, 1960" and used some language which could be found to relate to the "Contract" rather than to the proposal, the master should have considered only such evidence as pertained to the "Contract" and should have decided the case in accordance with its terms.

Where, as in this case, the contract involved is not recited *verbatim* in the declaration but is declared on according to its legal effect, a proposal agreed upon on October 3, 1960, can be proved under the allegation "on or about October 4, 1960" as the date the contract was entered into. 41 Am. Jur., Pleadings, *s.* 379; 17A C. J. S., Contracts, *s.* 575. Furthermore, the

proposal dated October 3, 1960, was admitted in evidence without objection by the defendant as was the testimony on which plaintiff relied to prove it was the contract between the parties. It has long been the rule that it is not our practice to spend time in the investigation of the accuracy of the pleadings after the action has without objection been fully tried by the parties. *LePage* v. *Company*, 97 N. H. 46, 50.

The master found that the proposal of October 3, was an offer and there appeared to be no reason for an officer of the defendant to sign it except for the purpose of accepting plaintiff's offer. The master ruled that the defendant's signing constituted an acceptance and that a completed contract between the parties resulted.

The description of the materials to be supplied and of the work to be performed by the plaintiff contained in the proposal is substantially the same as that contained in the "Contract." The total price to be paid by the defendant therefor and the various stages at which it was to be paid are described in substantially the same manner in both documents. Both refer to drawings by an architect dated September 6, 1960. There is no question that plaintiff's president, Alvan E. Shuman, was authorized to execute the proposal on behalf of the plaintiff. There was ample evidence to support a finding that the officer who signed on behalf of the defendant was authorized to do so.

The master could find on the evidence that plaintiff's offer in the form of its written proposal of October 3, 1960, contained in definite terms the promises and performances to be rendered by each party and that upon its acceptance by the defendant a contract between the parties resulted. *Maloney* v. *Company*, 98 N. H. 78, 82; 1 Williston, Contracts (3d *ed.*) *s.* 23; Restatement, Contracts, *s.* 32.

Defendant maintains however that Morrison Booth had full authority to sign on behalf of the plaintiff the "Contract" dated October 4, 1960, and that plaintiff accepted it by its president, Alvan Shuman, and is estopped to deny that it constituted a valid and binding agreement between the parties.

The master found and ruled "that at no time did the plaintiff corporation or any of its officers ever authorize Booth to sign for and on behalf of the corporation. No indication was ever given to the defendant by anyone authorized to do so that Booth had such authority." The master also found that it was not

necessary that Booth have authority to bind the plaintiff in order to accomplish his job of negotiating. He found that there was no evidence that in operations of the type involved here, this type of authority is usually granted "to persons who function as Booth functioned in the present case."

The master found and ruled that Booth lacked authority either actual, apparent or incidental, to bind the plaintiff and that his signature on the "Contract" did not effect a binding agreement between plaintiff and defendant.

There was evidence that Booth had been "just working as a commission agent" for the plaintiff for about six months. He would bring leads to the plaintiff's office, plaintiff's president, Shuman, would price them, and Booth would go back out and try to sell them and close the deals. There was further evidence that Booth had no authority to execute documents such as the "Contract" of October 4 and had never executed any contracts of this type previously to the knowledge of plaintiff's president. A holding that Booth had no actual authority to execute the "Contract" on behalf of the plaintiff was warranted on this evidence. *Richardson* v. *Sibley*, 101 N. H. 377, 379; Restatement (Second), Agency, *s.* 26. Nor was there any evidence which compelled a finding that incidental authority to execute such a "Contract" was essential in order to carry out Booth's duties as a commission agent. 3 Am. Jur. 2d, Agency, *s.* 71; Restatement (Second), Agency, *ss.* 35, 36, 50, *comment* b.

"Apparent authority to do an act is created as to a third person by written or spoken words or any other conduct of the principal which, reasonably interpreted, causes the third person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him." Restatement (Second), Agency, *s.* 27; *Record* v. *Wagner*, 100 N. H. 419, 421. Officers of the defendant testified that they did not talk to or consult with Shuman prior to the signing of the "Contract" and that all the negotiations were made with Booth. There is no dispute that the first proposal from the plaintiff to the defendant was in writing on plaintiff's letterhead signed, not by Booth, but by Shuman. James Irwin, Jr., an officer of defendant testified as follows: "Q. Did Mr. Booth at any time tell you that you would have to enter into a contract directly with Mr. Shuman? A. Whatever we did sign would involve the H & B Construction firm. I don't know the legal terms of

it, but whatever the contract was would be with H & B Construction." There was no evidence that Booth had ever signed any contract for the plaintiff when he executed the "Contract" in this case. The evidence did not compel a finding that any statement, act or conduct of the plaintiff caused the defendant to justifiably believe that plaintiff consented to have Booth execute the "Contract" dated October 4, 1960, and bind it thereby thus providing Booth with apparent authority to do so. *Davison* v. *Parks*, 79 N. H. 262; *Commercial Cas. Co.* v. *Mansfield*, 98 N. H. 120, 132; 3 Am. Jur. 2d, Agency, *s.* 74; Restatement (Second), Agency, *ss.* 8, 27; *Cf. Record* v. *Wagner*, 100 N. H. 419.

The master also found and ruled that when Booth delivered the "Contract" to Shuman together with defendant's check for $2,000, which was also called for in the proposal of October 3, Shuman did not assent to the terms of the "Contract" and had no duty to the defendant to reject it. He further found and ruled that Shuman's doing so would not have changed the situation of the parties who were already bound under the terms of the prior proposal.

"A person who is not otherwise liable as a party to a transaction purported to be done on his account, is nevertheless subject to liability to persons who have changed their positions because of their belief that the transaction was entered into by or for him, if (a) he intentionally or carelessly caused such belief, or (b) knowing of such belief and that others might change their positions because of it, he did not take reasonable steps to notify them of the facts." Restatement (Second), Agency, *s.* 8 B; 3 Am. Jur. 2d, Agency, *s.* 76. Shuman testified that when plaintiff received its proposal of October 3, 1960, signed by the defendant it contacted the supplier of materials for the proposed building. When the plaintiff received defendant's check for $2,000, dated October 4, 1960, it endorsed it to the supplier and sent it as the required deposit for the materials. This same amount was required as a deposit from the defendant under the terms of the proposal of October 3. Shuman also testified that when he saw the "Contract" and read the time limit provision he talked to Booth who informed him "he would contact the Irwins and get it taken out, and he told me afterwards that he had contacted them and he says 'Don't worry about it. It is all straightened out.'"

The materials were not received on the site until December 21, 1960, at which time the erection of the building was started. At that time the defendant made a payment of $15,000 which was in addition to the deposit of $2,000 previously made. Although this was almost a month after the time limit of November 28, 1960, within which the building was to be completed according to clause 9 of the "Contract," plaintiff received no communication from the defendant about delay in performance until it received a letter dated January 11, 1961. This letter however made no reference to the damages provided by clause 9 but enclosed a payment of $5,000, then due. The balance to be paid was not due until the contract was completed. This schedule of payment was called for in the proposal of October 3, 1960, which the master found was the agreement binding the parties and was substantially the same schedule as in the "Contract."

The above conduct of the parties did not compel a holding that plaintiff by its actions induced such a change of position by the defendant as would estop the plaintiff to deny liability under the terms of the "Contract" dated October 4, 1960. 2 Williston, Contracts (3d *ed.*) *s.* 277 B; See *Fitch Company* v. *Insurance Company*, 99 N. H. 1, 4.

The holding of the master, approved by the Trial Court, being sustained, there is no need to discuss the nature and effect of the "Time Limits" clause in the "Contract." The defendant, at the trial also waived its claim for damages based upon the cost which it claimed it had incurred to complete the contract. In its brief, defendant states that the contract was substantially completed on February 28, 1961. The only issue remaining to be considered is the award to the plaintiff of $4,278, the balance due under the proposal of October 3, 1960.

The master's report stated "there is no evidence upon which the master could find that the delay in delivery of materials was the fault of the plaintiff. After the delivery of the materials, there was no unreasonable delay not caused by weather or the failure of the defendant to approve changes and the type of plastic to be used."

The evidence on many of these matters was in conflict and understandably the parties do not agree on the conclusions to be drawn from it. However there was sufficient evidence to support a verdict for the plaintiff in the amount of $4,278, the balance due it under the proposal of October 3, 1960, which could

be found to have been accepted by the defendant and to constitute the agreement of the parties and not to be breached by the plaintiff.

*Judgment on the verdict.*

All concurred.