**SEACOAST ELECTRIC CO., Inc.,**
**Plaintiff, Appellee,**

v.

**FRANCHI BROS. CONSTRUCTION**
**CORP., Defendant, Appellant.**

**No. 7748.**

United States Court of Appeals,
First Circuit.

Feb. 17, 1971.

Donald R. Bryant, Dover, N. H., with whom Burns, Bryant, Hinchey, Nadeau & Cox, Dover, N. H., was on brief, for defendant-appellant.

Paul McEachern, Portsmouth, N. H., with whom Shaines, Madrigan & McEachern, Portsmouth, N. H., was on brief, for plaintiff-appellee.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

McENTEE, Circuit Judge.

This is a diversity suit for breach of contract brought by Seacoast Electric Co., Inc., a New Hampshire electrical subcontractor, against Franchi Bros. Construction Corp., a Massachusetts general contractor. After trial, the jury found for the plaintiff. Thereafter the district court denied defendant's motion for judgment N.O.V. and for new trial. Defendant appeals.

Considered in the light most favorable to the plaintiff, the facts may be briefly stated as follows. In 1966 the University of New Hampshire advertised for bids for the construction of a new residence hall. The bids were required to be submitted by 3 p. m. on July 12, 1966. Plaintiff learned through a trade publication that the defendant was going to bid this job. As was the general custom in the trade, a short time before the deadline on the 12th, Cressey, plaintiff's president, telephoned his company's bid for the electrical subcontracting work to one Rosak, the defendant's estimator.[1] Plaintiff's was the low bid for the electrical subcontracting. In accordance with defendant's practice, Rosak telephoned this bid, along with the low bids in other subcontracting categories, to Franchi, the defendant's president. Franchi then listed plaintiff as electrical subcontractor in defendant's general bid to the University. Shortly after the public bid opening on the 12th, Franchi learned that his company was low bidder on the general contract. Plaintiff's president Cressey also got the same information and later that afternoon called Rosak. The latter told Cressey that defendant had carried plaintiff in its bid. Some time later, however, defendant's bonding company sent an unfavorable report on the plaintiff and, upon further investigation of plaintiff's business reputation, defendant concluded that plaintiff could not properly perform the electrical subcontracting work. Thereupon, with the consent of the University, defendant substituted another electrical subcontractor for the plaintiff.

Plaintiff's theory of recovery was that by custom a contract came into existence when (1) the general contractor used the subcontractor's figures in its general bid and (2) the general contractor, after getting the contract, informed the subcontractor that it had used the latter's figures. Assuming such custom was adequately proved, it is undisputed that the first point was established. As to the second, the jury evidently resolved the conflicting testimony and found that Rosak had told Cressey that plaintiff's

---

1. Cressey telephoned an identical bid to four other construction companies bidding on the same job, all after 2 p. m. At 1:30 p. m. he had submitted a somewhat lower bid to a fifth company because he had previously done business with it. There was testimony that the last-minute telephone bids were a subcontractor practice designed to prevent "bid shopping" by general contractors.

figures were used. The principal issue in this appeal is whether there was sufficient evidence for the jury to find actual or apparent authority in Rosak to bind the defendant,[2] the point being that on plaintiff's theory, Rosak was not performing a mere ministerial act, but was formally entering a contract.

Plaintiff has not argued on appeal that Rosak had *actual* authority to bind the defendant. In fact both Franchi and Rosak denied that Rosak had such authority and there was no evidence for the jury to so find. Rosak's conversation with Cressey was not competent to prove any broader scope of authority. Brownell v. Tide Water Associated Oil Co., 121 F.2d 239, 244 (1st Cir. 1941), and cases cited therein; *compare* Restatement, Agency 2d § 285 (1958), *with id.* § 47. Thus the case turns on whether Rosak had apparent authority to do so.

"Apparent authority to do an act is created as to a third person by written or spoken words or any other conduct of the principal which, reasonably interpreted, causes the third person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him." H & B Construction Co. v. James R. Irwin & Sons, 105 N.H. 279, 283, 198 A.2d 17, 20 (1964).

*Accord,* Record v. Wagner, 100 N.H. 419, 421, 128 A.2d 921, 922 (1957). The district court used essentially this language in instructing the jury, and neither party objected. By finding for the plaintiff, the jury must have determined that (1) Cressey reasonably believed Rosak could contract with him and (2) defendant acted so as to cause Cressey to think Rosak could contract for it. We find no evidence in the record for either proposition. As to the first, we note that Cressey had never done business with defendant before, and there is no evidence that on July 12, 1966, he knew what position Rosak held. Cressey heard Rosak say that he had compiled "his bid" to the University.[3] The jury may have concluded that, at that moment, Cressey thought Rosak had power to contract with the University. Yet, even believing this, Cressey could not have reasonably assumed that Rosak had authority to make other kinds of contracts. *See* Brownell v. Tide Water Associated Oil Co., *supra*, 121 F.2d at 244; Great American Indemnity Co. of New York v. Richard, 90 N.H. 148, 150, 5 A. 2d 674, 676 (1939); Bohanan v. Boston & Me. R. R., 70 N.H. 526, 528, 49 A. 103, 104 (1901). Cressey's first duty was to inquire further as to Rosak's authority. Hartford Accident & Indemnity Co. v. Lougee, 89 N.H. 222, 226, 196 A. 267, 270 (1938); Reed v. Linscott, 87 N.H. 139, 142, 175 A. 240, 242 ((1934). As to the second point, the evidence taken most favorably to plaintiff shows that defendant authorized Rosak to formulate certain bids. In furtherance of this function, defendant channeled last-minute subcontractor bids to Rosak before submitting its general bid. There is no evidence that the defendant gave Rosak any formal duties with respect to subcontractors once their bids were in. By merely having Rosak handle certain calls, defendant could not have anticipated that Cressey would be misled into

---

2. There was no evidence submitted on the inherent authority of estimators to enter contracts.

3. Cressey's only testimony concerning Rosak was as follows:
"I spoke with Slotnik, and they informed me that Franchi Construction Company was the low bidder. I then called Stan Rosak at Franchi, and he told me that he had named us and carried us in his bid."
And:

"Stan Rosak, I might mention, is the man I submitted my telephone bid to originally. So, therefore, he was the person I called to find out the results, and he said that he did find out the results, and he said that he did name us on his bid form and that [sic] he told me at that time that their price on their bid form was $816,000.00. * * *"

thinking that Rosak had the power to contract. Westcott v. Vermont Accident Insurance Co., 104 N.H. 127, 131, 180 A.2d 442, 445 (1962) (dictum); Reed v. Linscott, *supra*, 87 N.H. at 142, 175 A. at 242; Edelstone v. Salmon Falls Manufacturing Co., 84 N.H. 315, 319, 150 A. 545, 547 (1930); Davison v. Parks, 79 N.H. 262, 264, 108 A. 288, 289 (1919). Nor did defendant's conduct give Cressey the right to assume that Rosak had authority to bind it. Brownell, *supra*, 121 F.2d at 244; Record v. Wagner, *supra*, 100 N.H. at 421, 128 A.2d at 923.

We conclude that the district court erred in not entering judgment for defendant N.O.V. and we order that such judgment be entered. Neely v. Martin K. Elby Construction Co., 386 U.S. 317, 326, 87 S.Ct. 1072, 18 L.Ed.2d 75 (1967). Plaintiff has not requested a new trial in case of reversal, and we see no reason either from the briefs or the record that would justify a new trial. Only Cressey could testify as to what he knew about Rosak, and the record shows that he knew very little.

Reversed and remanded with instructions to the district court to enter judgment for the defendant.