**In the Matter Of NORTHEAST RESOURCES, INC., Debtor.**

**STANADYNE, INC., Plaintiff,**

v.

**NORTHEAST RESOURCES, INC., Defendant.**

**Bankruptcy No. 2–81–01271. Adv. No. 2–82–0165.**

United States Bankruptcy Court, D. Connecticut.

May 27, 1982.

James J. Tancredi, Hartford, Conn., for plaintiff.

Catherine P. Kligerman, Hartford, Conn., for debtor-defendant.

## MEMORANDUM AND ORDER

ROBERT L. KRECHEVSKY, Bankruptcy Judge.

### I.

The issue in this proceeding is whether subsequent purchase orders sent to Northeast Resources, Inc., the debtor, by the plaintiff, Stanadyne, Inc., superseded, modified, or cancelled a prior service contract entered into by the parties.

### II.

### BACKGROUND

The debtor operates a rubbish removal service. On January 3, 1980, it submitted a service contract to the plaintiff setting forth the nature and costs of rubbish services to be rendered the plaintiff at several locations. The debtor had performed similar services for the plaintiff in previous years. The service contract provided that it would be for a term of three years from January 1, 1980 and was signed by Fred A. Andreoli, the debtor's president. On February 8, 1980, John Radziewicz, the purchasing agent for the plaintiff, executed the

contract on its behalf and returned the contract to the debtor.

Sometime later, Ralph Jamieson, a buyer for the plaintiff who works under Mr. Radziewicz, mailed to the debtor purchase order No. 58129, dated "1/1/80". The purchase order varied from the service contract in that it provided that all invoices to the plaintiff must refer to the purchase order number, that the order cancelled "all previous Blanket Orders," that the purchase order was "to take effect on 1/1/80 and shall remain in effect until 12/31/80 unless prior written notice was given," and that "[t]his order shall be subject to cancellation by either party with the issuance of written notice of such intent at least thirty (30) days prior to such cancellation." Mr. Jamieson testified that the purchase order was sent because the plaintiff preferred to use its purchase orders to govern transactions whenever possible. He stated it was his custom to backdate purchase orders to conform to the date a proposal was accepted.

On March 3, 1980, the debtor's bookkeeper sent the plaintiff a letter which acknowledged receipt of purchase order No. 58129. The letter noted a change in a price term between the service contract and the purchase order: "Please note one change on page 3. Our letter of January 3, 1980 quotes the cost of service at the A&T Building as $437/mo. for rental. Your purchase order states that the cost is $427.00/mo. I would be most appreciative if you would correct your records." On December 30, 1980, Mr. Jamieson sent another purchase order to the debtor, No. 72129. This purchase order contained similar provisions as to invoicing and contract termination, and provided that it "is to take effect on 1/1/81 and shall remain in effect until 3/31/82 unless prior written notice is given." The debtor did not acknowledge receipt of this purchase order. The debtor's bookkeeper used the purchase order numbers in invoicing the plaintiff as it rendered its services during 1980 and 1981.

The debtor filed its chapter 11 petition on December 30, 1981. Mr. Andreoli testified

he never saw purchase orders No. 58129 and No. 72129 before the date of trial, that the company bookkeeper had no authority to execute contracts on behalf of the debtor and that the debtor required three-year contracts in order to secure bank financing for equipment purchases. Mr. Radziewicz acknowledged that during the negotiations for the service contract Mr. Andreoli told him the debtor required three-year contracts.

### III.

### DISCUSSION

The plaintiff claims there is no existing contract between it and the debtor and purchase order No. 72129 has now expired by its own terms. It contends that the service contract dated January 3, 1980 was superseded by the purchase order No. 58129 as stated in the provision concerning cancellation of prior contracts and as verified by the conduct of the debtor's bookkeeper. While an existing contract may be modified or abrogated by a new contract arising from a new writing or inferred from the attendant circumstances and conduct of the parties, the plaintiff bears the burden of proving that the parties clearly intended to modify the existing contract. *Malone v. Santora*, 135 Conn. 286, 64 A.2d 51 (1949); *Osborn v. Stevens*, 132 Conn. 410, 45 A.2d 160 (1946). That burden consists of proving all the necessary elements of any valid contract:

It happens very frequently that a party to a valid contract attempts, either as plaintiff or as defendant, to show that a new contract has been substituted, either as a total discharge or as a partial modification and discharge. The existence of such a new contract of substitution or modification must be established in the same way as is any other contract. No one will be held to have surrendered or modified any of his contract rights unless he is shown to have assented thereto in a manner that satisfies the requirements of a valid contract.

## 112

6 A. Corbin, *Corbin on Contracts* § 1293 (1962) (footnote omitted). *See also Lar-Rob Bus Corp. v. Fairfield*, 170 Conn. 397, 402, 365 A.2d 1086, 1090 (1976); *Hess v. Dumouchel Paper Co.*, 154 Conn. 343, 347, 225 A.2d 797, 799 (1966).

■ Based upon the record in this proceeding, I conclude that the plaintiff has not met its burden of proof. The service contract was duly executed by both parties and bound the plaintiff to pay for services to be rendered by the debtor for a period of three years. The acknowledgement of receipt of the plaintiff's purchase order No. 58129 by the debtor's bookkeeper does not amount to a modification of the existing service contract. "One receiving an offer to change a contract to which he is a party is held to be under no obligation to answer it; and his silence cannot be construed as an acceptance where nothing else is shown." 17 Am.Jur.2d *Contracts*, § 465 (1964). Consequently, the debtor was under no duty to inform the plaintiff that it did not agree to the provision contained in the purchase order which indicated it was binding for only one year.

■ The plaintiff claims that the debtor's continued references to purchase order Nos. 58129 & 72129 in its correspondence and invoices with the plaintiff evinces an intention to be bound by the purchase orders. At trial, Andreoli testified that he had never previously seen these purchase orders and that their use represents no more than the debtor's compliance with the plaintiff's request for referencing invoices.

■ The plaintiff says that it was induced to believe its purchase orders superseded the service contract by the acknowledgement sent by the debtor's bookkeeper in response to the receipt of purchase order No. 58129. In its brief, the plaintiff states that "the apparent authority vested in the person making the acknowledgement would and did tend to induce Stanadyne to believe its Purchase Order would supersede the Service Contract." The letter acknowledging the purchase order indicates only that the debtor had received the purchase order and requested that a price term be corrected. Andreoli testified that the bookkeeper had no express authority to enter into contracts. The letter sent by the bookkeeper contained nothing to indicate she had apparent authority to cancel existing contracts on behalf of the debtor, and any reliance by the plaintiff on that letter was unjustified. *H & B Construction Co. v. Irwin & Sons, Inc.*, 105 N.H. 279, 198 A.2d 17 (1964) (agreement with a liquidated damage provision signed by plaintiff's agent one day after the plaintiff and the defendant by their duly authorized officers had executed an agreement without such a provision held not to govern the work to be performed in the erection of a building by the plaintiff).

I conclude that the service contract dated January 3, 1980 has not been cancelled or modified and remains an existing contract.